| 80 | 187 |
| 89 | 169 |
| 80 | 187 |
| 90 | 313 |

THE PEOPLE, EX REL. MEDARD A. METEVIER, v. JOSEPH THERRIEN.

*Officers—Jurisdiction of Governor to remove—Charges of misconduct.*

1. The authority of the Legislature to confer upon the Governor the power of removal of county officers was sustained in *Clay v. Stuart,* 74 Mich. 411.

2. The Governor has no power to order an investigation except upon *specific* charges; nor can he remove an officer, after such investigation, unless upon such a showing and record of the proceedings as will show to the world and to the accused for what particular act or acts of misconduct he has forfeited his office, and been removed therefrom. *Dullam v. Willson,* 53 Mich. 393.

3. A charge that such an officer is "an habitual drunkard" is as explicit as it well could be.

4. Charges that respondent is—
    a—Wholly incompetent to execute properly the duties of the office, and—
    b—That he is guilty of official misconduct,—
    Are mere conclusions of fact, and fall under the condemnation of *Dullam v. Willson,* 53 Mich. 393.

5. A charge that the respondent "arrested innocent people without process, and after confining them a short time, without arraignment, allows them to go free," and that he "assaults peaceful citizens, and in one instance inflicted serious injury, dislocating a shoulder," is altogether too general to meet the requirements of justice or the statute. How. Stat. § 653.

6. Where the charges presented to the Governor are not sufficiently specific, the defect is not cured by the service of a bill

of particulars five days before the hearing, containing the necessary specifications, the respondent being entitled to a notice of eight days, accompanied by a copy of such charges. How. Stat. § 654.

7. The Governor cannot, by any act of his own, enlarge the power granted him by the Legislature; nor can the Legislature, by any act, deprive a person of a right to hold an office to which he has been elected or appointed, and whose duties he has assumed, except by due process of law.

*Quo warranto.* Submitted February 19, 1890. Decided April 11, 1890.

Information in nature of *quo warranto* to test the legality of the removal of the relator from the office of sheriff by the Governor, and to oust the respondent, who was under-sheriff, and is acting as sheriff. Judgment of ouster entered. The facts are stated in the opinion.

*S. V. R. Trowbridge,* Attorney General (*Watts S. Humphrey,* of counsel), for relator.

*James J. Brown,* for respondent.

MORSE, J. This is a *quo warranto* proceeding to test the legality of a removal by the Governor.

The relator was duly elected sheriff of Mackinac county in the fall of 1888, and duly qualified; his term commencing January 1, 1889. The respondent held the office of under-sheriff, under and by appointment from relator. August 26, 1889, the Governor removed the relator from his office, and said under-sheriff is now acting as sheriff.

I think the Governor never acquired any jurisdiction in the premises, and that the removal was therefore unauthorized and unlawful. The Governor has no power to remove elective officers unless he strictly pursues the methods pointed out by the Constitution and laws of this State. The Legislature is authorized by the Constitution to—

"Provide by law for the removal of any officer elected by a county, township, or school-district, in such manner and for such cause as to them shall seem just and proper." Article 12, § 7.

The Legislature, by virtue of the authority above conferred, have specified the causes for which such an officer can be removed, to wit:

When such officer is incompetent to execute properly the duties of his office, or has been guilty of official misconduct, or of willful neglect of duty, or of extortion, or habitual drunkenness, or has been convicted of being drunk; or whenever it shall appear by a certified copy of the judgment of a court of record of this State that such officer, after his election or appointment, shall have been convicted of a felony. How. Stat. § 653.

The same section vests the Governor with the power of removal of such officer for the causes above specified, but declares the method of procedure to be taken in such cases. Before such officer can be removed, charges must be made against him in writing, verified by the affidavit of the party making the same, and exhibited to the Governor; nor can he take any action until this is done. It is further provided that the Attorney General, or the prosecuting attorney of the county of which the person accused is an officer, who may be directed by the Governor to make the inquiry into the charges, shall give at least *eight* days' notice to the accused of the time and place at which he will proceed to the examination of witnesses in relation to such charges before some circuit court commissioner or judge of probate—

"*And he shall also, at the time of giving such notice, serve on the officer accused a copy of such charges.*" How. Stat. § 654.

In *Clay v. Stuart*, 74 Mich. 411, the authority of the Legislature to confer the power of removal upon the Governor, under the Constitution, was sustained by this Court; that being the only question raised upon the

record. But it was said, further, that a person duly elected to and holding an office under such election could not be deprived of the same without due process of law; "and this requires notice to the party, a hearing, and determination."

In the case before us it is plain to me that the relator did not have the notice required by the Constitution and the laws of this State; nor was he removed upon any charge properly made to the Governor, and acted upon by the executive. The Governor has no right to order an investigation except upon specific charges; nor can he remove, after such investigation, unless upon such a showing and record of the proceedings as will show to the world and to the accused for what particular act or acts of misconduct he has forfeited his office, and been removed therefrom. In *Dullam v. Willson*, 53 Mich. 393, the authority of the Governor as to removals was exhaustively considered; and it was there held, under an express provision of the Constitution authorizing the executive, when the Legislature was not in session, to remove State officers for—

"Gross neglect of duty, or for corrupt conduct in office, or for any other misfeasance or malfeasance therein,"—

That the power of removal could only be exercised upon charges specifying the particular acts or neglect relied on to make out the cause alleged, which must be one of the causes specified in the Constitution (Article 12, § 8); and that the respondent must have notice of these charges and *specific allegations,* and reasonable notice of the time and place when and where he will have an opportunity of a hearing thereon.

Mr. Justice CHAMPLIN, in the leading opinion, at page 407, says:

"There must be charges specifying the *particulars* in which the officer is subject to removal. It is not suf-

ficient to follow the language of the Constitution. The officer is entitled to know the *particular* acts of neglect of duty or corrupt conduct, or other act relied upon as constituting malfeasance or misfeasance in office; and he is entitled to a reasonable notice of the time and place when and where an opportunity will be given him for a hearing; and he has a right to produce proofs upon such hearing."

Mr. Justice CAMPBELL is still more emphatic in his statement of the rights of the accused. At page 413, he says:

"It has always been held that general conclusions, or conclusions on general charges, were not enough, but the facts on which the judgment was based must appear, either in specific charges or in specific findings, on which the party has been heard on legal proofs," citing a large number of decisions in favor of that proposition.

And again, on the same page—

"These cases not only require a proper hearing on proper charges, but hold that those charges must consist of distinctly stated facts, and not general charges of wrong or neglect, so that it can be determined, as a matter of law, whether what the removing body treats as wrong is within the legal quality of wrong."

An examination of the proceedings here will show that the law as interpreted in *Dullam v. Willson, supra,* was not complied with. The charges preferred against the relator, and exhibited to the Governor, were as follows:

"1. Because he is wholly incompetent to execute properly the duties of his said office.

"2. Because he is an habitual drunkard.

"3. Because he is guilty of official misconduct.

"4. Because he is now laboring under an attack of *delirium tremens,* and his liberties have to be restrained to prevent him doing bodily injury to citizens against whom he has some imaginary grudge.

"5. Because, while in his drunken debauches, he arrests innocent people without process, and after confining them a short time, without arraigning them, allows them to go free; and also, while intoxicated, he assaults peace-

ful citizens, and in one instance inflicted serious injury, dislocating a shoulder."

As to the charge of being an habitual drunkard, this was as specific as it well could be; but, as will be seen further along, this charge was not insisted upon at the investigation, or acted upon by the Governor.

The first and third charges are mere conclusions of fact, and fall under the condemnation of *Dullam v. Willson.* No specific acts of official misconduct are alleged, nor is any time or place of such misconduct given.     There is given the accused absolutely no information of what he is to be called upon to meet.     The same is true as to in what respect he is incompetent to perform the duties of sheriff; but, as this charge was not acted upon, it may be dismissed without further comment.

The fourth and fifth charges, if treated as specifications of official misconduct, might be of some use to the accused as information; but the fourth, which is the only specific allegation, was dropped, and the fifth is altogether too general to meet the requirements of justice or the statute. It fails to state any time or place, or the name of any person arrested while the sheriff was in a drunken debauch, or injured by him in an assault.

This want of specific allegations in the charges was attempted to be cured by a "bill of particulars" filed, and served upon relator, July 12, 1889, which bill is as follows:

"To MEDARD A. METEVIER, Sheriff of Mackinac County, Michigan:

"Please take notice that the specific acts relied upon in the investigation of the charges preferred against you as sheriff, a copy of which charges has heretofore been served upon you, are as follows:

"1. For an assault and battery committed upon one James Maloney on June 24, 1889, at the city of St. Ignace, Mackinac county, Michigan.

"2. For an assault and battery committed upon Thomas Gal-

lagher on June 24, 1889, at the city of St. Ignace, Mackinac county, Michigan, and for the illegal arrest and imprisonment of said Gallagher at said time and place.

"3. For the illegal arrest and imprisonment of Nellie Strohn on June 28, 1889, at the city of St. Ignace, Mackinac county, Michigan.

"4. For the illegal arrest and imprisonment of Minnie Bellant on June 28, 1889, at the city of St. Ignace, Mackinac county, Michigan.

"5. For threats against the life of James J. Brown on June 28, 1889, at the city of St. Ignace, Mackinac county, Michigan.

"6. For drunkenness on June 24, 25, 26, 27, and 28, 1889, at the city of St. Ignace, Mackinac county, Michigan.

"Yours, etc.,<br>"JAMES J. BROWN."

But the charges served upon him, and in time under the statute, were not these specific allegations, but the same general charges presented to the Governor, and upon which the investigation was ordered.

It is maintained by the counsel for the relator that the charges set out in this so-called "bill of particulars" do not constitute any of the offenses or misconduct named in the statute. I cannot agree with him in this. If the relator was drunk for five successive days, and during such drunkenness committed two assaults and batteries, and made three illegal arrests, and threatened the life of the prosecuting attorney, he was not only guilty of official misconduct, but had shown himself incompetent to perform the duties of a conservator of the peace and sheriff of a county. But the trouble is that these, in the *first* place, are not the charges presented to the Governor, and upon which the investigation was ordered; and, *second*, the accused was not given the notice of *eight* days before the hearing upon them, required by the statute. The hearing was noticed for July 17, 1889,—only five days after this bill of particulars was served upon relator. These jurisdictional questions were raised by the relator

when he first appeared before the judge of probate of Mackinac county, the officer appointed to hold the court of investigation, but were overruled by him and the inquiry proceeded with.

It appears from the finding of the Governor that—

" Certain of the charges aforesaid [referring to the original charges exhibited to the Governor] had been proven,"—

But what particular charge does not appear. The Governor also finds—

"The said Medard A. Metevier guilty of official misconduct as alleged against him by the said Michael Marley,"—

Marley being the person who verified the original charges by affidavit, as required by the statute; but in what this official misconduct consisted, or when it occurred, or where, does not appear from the Governor's judgment, from the original charges, or from anything found anywhere in the record before us. Metevier has been charged with official misconduct, and, after inquiry, removed from office for the same; but we are left entirely in ignorance of what he had done, or omitted to do, in his official business, which is found by the Governor to be official misconduct. Nor can the accused or any one else ascertain from the charges preferred, or the judgment rendered, for what act or acts he has been deposed and deprived of an office to which he was duly elected and qualified. This office, under these circumstances, cannot be said to have been taken away from him by . "due process of law," and the language of Justice CAMP-BELL in *Dullam v. Willson,* 53 Mich., at page 413, already quoted, seems peculiarly applicable to this case. There have been no charge here of "distinctly stated facts." There has been no "specific charges" or "specific findings." He has not been convicted of any charge but one,

and that the third, to wit, guilty of official misconduct. He has been acquitted of the others. This charge was general, and the finding is general.

It is claimed by respondent's counsel that, the Governor having passed upon the sufficiency of the charges, his jurisdiction thus assumed cannot be questioned by this Court. This is not so. The Governor cannot, by any act of his own, enlarge the power granted him by the Legislature; nor can the Legislature, by any act, deprive a person of a right to hold an office to which he had been elected or appointed, and whose duties he has assumed, except by constitutional methods, by due process of law. The Governor cannot foreclose the right of the courts to preserve to such officers their constitutional rights. He cannot order an inquiry upon charges of misconduct not embraced within the statute granting him power to act; nor can he act upon a general charge of official misconduct, as is the third charge here, without any specifications under it, informing the executive or the accused in what particular thing or things this official misconduct consists. And while he had authority, under the charges filed with and exhibited to him, to order an inquiry into the habitual drunkenness of Metevier, and the fact of his laboring at that time under *delirium tremens*, caused by excessive drink, he could not, because he entertained jurisdiction for this purpose, and had a right to do so, extend his jurisdiction further, and go outside of the charges made to him in the statutory way; nor could he supplement and aid defective and imperfect charges by the act of the prosecuting attorney, or other officer conducting the inquiry, in serving upon the accused at the inquiry, or any number of days before, less than eight, more complete and specific allegations of wrong-doing. The right to hold this office is just as sacred in the eyes of the law to Metevier as the right to

hold the property he has earned. It is a property right, and one of which he can only be divested by a strict conformity to the statute. If the time of notice, or such completeness of notice as will give the accused full information of what he has to meet, can be dispensed with, or shortened or curtailed, then other formalities of the statute may be disregarded, until it shall at last become a mere question of the executive will or pleasure.

The people of Mackinac county have rights also, as well as the accused. They have the right, under the Constitution, to elect their county officers, and to have such officers serve out the terms for which they were elected. It was not contemplated by the Constitution that such officers should be removed but for grave reasons; and the Legislature, in its construction of the constitutional provision authorizing such removal, has carefully guarded the rights of such officers, and pointed out the method of such removal. In my opinion it is a power to be carefully used, and in exercising it the statutes must be strictly followed. The same rule should apply as to penal statutes. It imposes something more than a penalty. The statute authorizes the forfeiture of a political and valuable franchise, the loss of which is accompanied with more or less of shame and disgrace. The right of the individual is a matter of public concern, as the public is composed of individuals; and neither of the three great departments of our government—executive, legislative, or judicial—can trench upon such rights without damage to the whole people.

It is not claimed but that the Governor acted with the best of motives, and under the impression that he had full jurisdiction in the premises; and it certainly appears from the record that he gave the relator a full and fair hearing before him by counsel, after the inquiry before the judge of probate had been concluded. But this can-

not alter the case. The proceedings before this were not in accordance with the statute, and ought not to be permitted to stand approved, and as a precedent in other cases. This is not alone a question in which the relator and respondent are interested. It is one fraught with deep concern to every county officer, and to the whole people of this State, for all time to come, as a test of the rights of the citizen office holder, as regards his removal for cause before his term expires, and as to the method to be employed in such removal.

Judgment of ouster must be entered against the respondent, and the relator restored to his rights by the proper entry in this Court. He will also recover his proper costs against respondent.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred.