[No. 1196.   Decided March 31, 1894.]

THE STATE OF WASHINGTON, *on the relation of George H.
Heilbron, Respondent,* v. J. W. VAN BROCKLIN, *Appellant.*

QUO WARRANTO — WHEN LIES — REVIEW OF ACTION OF MAYOR IN
REMOVING AN OFFICER — PLEADING — NON-FEASANCE IN OFFICE
— JUDGMENT FOR DAMAGES.

Although the charter of a city authorizes the mayor to remove
any appointive officer for cause, after a hearing upon charges pre-
ferred which is judicial in its character, yet, under Code Proc.,
§ 679, quo warranto, and not certiorari, is the proper action for re-
viewing the legality of the proceedings before the mayor.

In an action of quo warranto by a member of the board of public
works of the city of Seattle, who had been removed from office by
the mayor on the ground that he had violated a provision of the city
charter declaring that no member of any board shall be directly or
indirectly interested in any contract with the city or for its use, the
charge being that the board of public works had voted to place in-
surance on property of the city with certain companies represented
in Seattle by a corporation of which the relator was a stockholder,
an answer setting up that the relator had been found to be a trustee
in such corporation does not accord with the charge, and is demur-
rable.

When the chief executive duties of a city are confided by its char-
ter to the board of public works, and it is given control of all pub-
lic work, the water system, streets, sewers, wharves, parks, lights,
city property, and street improvements and assessments, and the
members are paid a salary of $1,500 per year, payable monthly, a
member of the board is guilty of non-feasance in office when he
confines his services to attendance upon the meetings of the board,
whose meetings are about fifteen in number per month, lasting
about one hour each, and neglects to personally visit and inspect
any of the public works going on under the direction of the board,
some of them involving unnecessary and extravagant expenditure,
on which reports are made to the council without personal knowl-
edge on the part of such member of the character of the work.
(SCOTT, J., dissents.)

In an action of quo warranto judgment for damages against the
defendant is unwarranted where there is no showing that he had
collected any of the salary of the office.

*Appeal from Superior Court, King County.*

*George Donworth,* and *James B. Howe,* for appellant.
*Burleigh & Gamble,* for respondent.

The opinion of the court was delivered by

STILES, J. — Respondent was removed from the office of member of the board of public works of the city of Seattle, by the mayor, for cause alleged and found to be sufficient after notice and a hearing. The court below, in a proceeding by quo warranto against his successor in the office, rendered judgment in favor of respondent, ousting the successor and charging him with the salary of the office during the period of his usurpation.

The appellant filed an answer to the information in which he set up the proceedings taken by the mayor and his findings and order pursuant thereto. Respondent demurred to the sufficiency of the answer, and when the court sustained the demurrer appellant declined to plead further, whereupon judgment as above stated was entered.

The only propositions submitted by appellant which are material are two, viz.: (1) Was the course taken by respondent to test the right to the office the proper one, or should the proceeding have been certiorari to the mayor? (2) Did the facts found by the mayor constitute "cause" for removal?

1. Code Proc., § 679, expressly provides that an information may be filed against any person who shall usurp, intrude upon, or unlawfully hold or exercise any public office within this state. This information is, under the code, a plain statement of the facts (§ 681), and therein is just like a complaint upon any other cause of action; that it is to be filed upon the relation of some one is the only even formal difference between this proceeding and an ordinary civil action. For convenience and from custom

we call the proceeding quo warranto, and it is the statutory
mode of testing the title to an office by the state, whether
there be a contestant for the office or not, and by a con-
testant on his own behalf.    Other methods of accomplish-
ing the same result, where the dispute is as to the validity
of an election, are found in the election laws.

It would seem, therefore, that the statute exactly cov-
ered this case.   Quo warranto was employed in *People, ex
rel. Metevier, v. Therrien*, 80 Mich. 187 (45 N. W. 78),
and the court passed both on the question of jurisdiction
and the sufficiency of the charge, although certiorari would
have been an appropriate proceeding for attack on the
jurisdiction.    A statutory proceeding similar to that pro-
vided for here was employed in *State, ex rel. Smith, v.
Anderson*, 26 Fla. 240 (8 South. 1), to determine which
of two claimants was entitled to the office of alderman of
the town of Daytona.    The charter of the town gave the
council the power to judge of the election returns and
qualifications of its own members, and it was urged that
the canvass of the vote, the declaration of the result, and
the admission of the respondent to the office by the council
was a prior adjudication which could not be set aside by
quo warranto; but this objection was passed with the re-
mark that the relator was not in any sense a party to the
alleged adjudication.

But the theory of appellant here is, that because the
charter of the city of Seattle authorized the mayor to re-
move any appointed officer for cause, and inasmuch as the
proceedings for removal must be judicial in their character,
the adjudication made by him cannot be inquired into and
its sufficiency ascertained, as to jurisdiction or upon the
merits, except by a direct proceeding for a review of the
judgment, and, as no appeal is provided for, the proceed-
ing must be certiorari.

No authority need be cited to uphold the general prop-

osition that the judgment of any tribunal, however inferior, to which the determination of a matter is committed will stand as verity until it is directly attacked, if, in the exercise of its power, it has kept within its jurisdiction. Counsel upon this point cite *People, ex rel. Hatzel, v. Hall,* 80 N. Y. 117, where quo warranto was refused for the benefit of the private relator, Hatzel, who claimed the office, but was sustained as to the people, who, it was declared, were not bound by the adjudication of the board of aldermen, although that body was, by statute, invested with the power to judge of the election returns and qualifications of its own members. In passing, it was held that the clause appended to this grant of authority, "subject, however, to the review of any court of competent jurisdiction," was nothing more than a declaration of what would have been the case without such clause. The case cited contains a very full and learned discussion of the relations of the courts to municipal corporations and inferior tribunals, much of which is applicable to the case before us. The relator was denied the benefit of the writ because, as it is said, he had himself invoked action by the board of aldermen by a petition that he be awarded a seat, because in the ensuing proceeding it had been determined that he had not, but that the respondent had, a right to the seat, and because that adjudication was unreversed and operative.

Certiorari is the universal method of trying these questions in New York; but when we come to examine the law upon which the practice is based, *People, ex rel. Clapp, v. Board of Police,* 72 N. Y. 415, is a fair specimen of the cases there, and it shows that, by some means, the evidence upon which the board acted was before the court, an unusual thing in certiorari where the record alone, with so much of the evidence as may be pertinent to the question of jurisdiction, is transmitted to the reviewing court. But there is in New York a complete code governing certiorari to

review the determination of inferior tribunals, art. 7, ch. 16, Code of Civil Procedure (1891), and at § 2140 we find the following:

"The questions, involving the merits, to be determined by the court upon the hearing, are the following only:

"4. Whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination.

"5. If there was such proof, whether there was, upon all the evidence, such a preponderance of proof against the existence of any of those facts, that the verdict of a jury, affirming the existence thereof, rendered in an action in the supreme court, triable by a jury, would be set aside by the court, as against the weight of evidence."

It is needless to say that in this state we have nothing but the common law writ to depend upon, and that an examination of the merits of a case could not be had under it.   In the case at bar there is neither statute, charter nor ordinance governing the proceedings to be taken by the mayor.   He was left to his own devices to originate the charges, notice, manner of hearing and determination, and he has performed this part of the proceeding in such a manner that no criticism is made of it.   He has, as appears by the answer, made a record sufficient as a return upon certiorari.   But suppose the respondent desired to contest the materiality or sufficiency of the evidence upon which the findings were made, is it not clear that both he and the court would be estopped?   And thus it would turn out that the officer would be removed (supposing the findings to be sufficiently strong) upon unsworn testimony, where there was no power on either side to summon witnesses, and, perhaps, in case the mayor should have no experience in judicial investigations, upon evidence which was wholly immaterial and irrelevant.   An instance of this kind is shown in *People, ex rel. Clapp, v. Board of Police, supra*, where the removal was made upon a charge of con-

36—8 WASH.

duct unbecoming an officer, and the only evidence was as to his age and some irregularities in his appointment not affecting himself.

Certiorari has been used both in contested election cases and in cases of removal from office elsewhere than in New York, but the authorities invariably hold that when there is no statute to supplement the common law writ, only the question of jurisdiction and the legality of the action of the inferior tribunal upon the record can be inquired into, except that the reviewing court will examine into the facts upon the jurisdictional question, if the jurisdiction is denied. *Election Cases*, 65 Pa. St. 20; *Donahue v. Will County*, 100 Ill. 94; *People v. San Francisco Fire Dept.*, 14 Cal. 479; *Henshaw v. Butte County*, 19 Cal. 156. And such is the general rule as to common law certiorari in all cases. Harris on Certiorari, § 45.

By this proceeding, therefore, the respondent would have no adequate remedy unless the one adopted can be upheld, and to do that it is only necessary to accept the statute in the form in which we find it and recognize an exception to the general rule that decisions of inferior tribunals are final unless directly attacked. With any other disposition of the matter there must necessarily be a failure of justice in many such cases.

2. There is a provision in the charter of the city that no member of any board shall be directly or indirectly interested in any contract with the city or for its use, and that any violation of this provision shall work a forfeiture of the office and warrant the removal of the officer. Two of the charges found to be sustained by the mayor were to the effect that the respondent, while a member of the board of public works, had voted to insure certain of the property of the city with foreign corporations of which the Washington Territory Investment Company was the local agent, and for which service the agent received a com-

pensation by commissions on the premiums paid by the city, he, respondent, then being a stockholder of the agent company, and interested in the commissions paid.

The findings upon these charges are in accordance with the allegations, except that respondent is found to be a trustee only of the Washington, etc., Company. It is urged that this must be taken as a finding that he was a stockholder, since, under the law, no one but a stockholder can be a trustee of a corporation; and that whether this be so or not is immaterial, because it is a finding of interest sufficient to meet the charter prohibition. But charges of this kind ought to be proven as made, and a variation of this gravity ought to defeat them. A stockholder would be necessarily interested in the proceeds of any contract with his company; but it might not be so with a trustee who might be holding such an office nominally, and for the mere accommodation of some friend. Any business man knows how mercantile and other private corporations are conducted in this respect. It may be said that a presumption would attach from the finding that respondent was a trustee, that he was a stockholder also, but if he was a stockholder in fact, why did not the finding respond to the charge and say so? The very fact of the variance causes a suspicion that the proofs did not warrant more than was found. It may be a question whether a mere naked trustee would come within the charter provision, although under the rules of agency a contract in the procurement of which he took part might be avoided. The court below found this part of the answer bad, and we concur in the finding.

Another branch of the charges relates to the respondent's alleged want of attention to the duties of his office. Under the charter the board of public works fills a very large place in the executive of the city. In fact, aside from the fire, police and treasury departments, it is pretty

much all there is of the executive excepting such powers
of supervision as are confided to the mayor.　Everything
in the shape of public work, the water system, the streets,
the sewers, wharves, parks, lights, city property and street
improvements and assessments are within the control of
this board.　The board consists of three members, at a
salary of $125 a month, and it would seem that they must
be very busy men.　The charter requires that the board
shall hold regular meetings twice each month, and special
meetings at such times as it may appoint or the president
may call.　It has appointed three meetings each week,
which usually last about one hour each.　The mayor finds
that the respondent has confined his services as a member
of the board to attendance upon these meetings, and that
he has not personally visited or inspected any of the public
works going on under the direction of the board, although
many that were important and expensive were being pros-
ecuted.　In some instances pointed out there was, accord-
ing to the findings, incompetency in management, and
unnecessary and extravagant expenditure; and reports to
the council upon these and other matters were joined in by
respondent without personal knowledge of them.　The
substance of the findings accords with the charges.　But
over against all that the mayor alleges, the respondent
claims that by attending the appointed meetings and per-
forming the first duty which the charter enjoins, viz., that
of making rules and regulations for the government of the
board and its officers and employés, he has done all that
the charter requires.　This position is supported by further
reference to the charter which authorizes the board to ap-
point a superintendent of water works, a superintendent of
sewers, a superintendent of buildings, bridges and wharves,
a street commissioner, and a city engineer, upon whom
rests the duty of inspecting and supervising the actual
operations and property of the city.　And it is also urged

that one member of a board of three can do nothing officially except at a meeting with the others.

But in our judgment it will not do to consider this board as if it were nothing but a formal body of in-door overseers gaining its knowledge of the city's affairs by reports from subordinates; or as if it were a legislature or a court.    It is certainly constituted as if it were intended to be a working body, and one whose members would be kept well occupied during regular business hours; either in knowing what was being done by subordinates outside, or in preparing for what is to be done on the inside, or keeping informed as to the multitude of affairs committed to their charge. The salary is a fair one, payable monthly, implying that the incumbent is not engaged for job work, or upon a per diem, but that his services during business hours are to be at the command of the city, if necessary to the proper conduct of its business.    What may be exactly the proper range of duties for each member of the board we cannot undertake to say, but are satisfied that the mayor was quite within the bounds when he held that the attention paid by respondent to the city's affairs did not fulfill the demands of the office under the charter.

We are, therefore, of opinion that the demurrer to the separate defense should have been overruled.

There was no showing that the appellant had collected any of the salary from the city, and therefore no judgment for damages should have been entered against him. *Merritt v. Hinton*, 55 Ark. 12 (17 S. W. 270); *People v. Nolan*, 101 N. Y. 539 (5 N. E. 446); *Bier v. Gorrell*, 30 W. Va. 95 (3 S. E. 30); *U. S., ex rel. Crawford, v. Addison*, 6 Wall. 291.

Judgment reversed, and cause remanded for further proceedings.

DUNBAR, C. J., and ANDERS and HOYT, JJ., concur.

SCOTT, J. (*dissenting*).—I dissent. No fact was found which was ground for removal. A personal inspection of the improvements under way was not required, nor was there any authority for individual supervision by any member of the board. The respondent may have taken other means to inform himself with reference to them aside from personal visits, and there was no showing that he was not well informed, and had not performed every duty enjoined upon him, as I view the record.