[No. 18593.   Department One.   November 25, 1924.]

THE STATE OF WASHINGTON, on the Relation of Joe Forstell, Plaintiff, v. J. T. OTIS, Mayor pro tempore of the City of Olympia, Respondent.[1]

MANDAMUS (39)—QUO WARRANTO (6)—NATURE AND GROUNDS— TRIAL OF TITLE TO OFFICE. Quo warranto, and not mandamus is the proper remedy, where the title to the office of councilman becomes involved from the fact that a councilman for one ward changed his residence to another.

MUNICIPAL CORPORATIONS (60)—TERM OF OFFICE—VACANCY— NECESSITY OF ADJUDICATION. Rem. Comp. Stat., § 9127, providing that the removal of councilmen from the ward for which he was elected shall create a vacancy in such office, is self executing and no proceedings are necessary to declare the vacancy.

QUO WARRANTO (6) — NATURE AND GROUNDS — TITLE TO OFFICE— PROCEEDINGS AND ISSUES. Quo warranto lies and is the proper remedy where a councilman is excluded from his office on the claim that he has removed from the ward from which he was elected, under Rem. Comp. Stat., §§ 1034, 1035, providing for the writ when any public officer shall have done or suffered any act which would work a forfeiture of his office, or wherever any one is claiming an interest in an office (PARKER, PEMBERTON, and MITCHELL, JJ., dissenting).

[1]Reported in 230 Pac. 414.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered March 17, 1923, dismissing an action for a writ of mandamus. Affirmed.

*Harry L. Parr* and *Vance & Christensen,* for relator.
*Troy & Yantis* and *A. W. Tyler,* for respondent.

MACKINTOSH, J.—This is an action in mandamus.

The petition alleges that the petitioner is the regularly elected councilman from the second ward of the city of Olympia and that he holds a certificate of election, under which he took his seat and represented his ward from the time of his election in 1920 until some time in January, 1924, at which time the mayor of the city refused to recognize the petitioner as councilman or to allow him to perform his duties as such, although his term had not yet expired, giving as his reason that the petitioner had moved his residence from the second ward. There are other allegations of the petition which set out in detail the actions of the mayor and his successor, the respondent in this action. The petition further alleges that the petitioner is in all respects duly qualified to sit and act as councilman, and asks that, by writ of mandamus, the respondent, as mayor *pro tem,* be required to permit the petitioner to continue to sit in the council meetings and do all things he is entitled to do as a regularly elected and duly qualified councilman.

To this petition the respondent made return and answer, denying the material allegations of the petition and setting up by affirmative defense that, subsequent to December, 1920, the date of the petitioner's certificate of election, the petitioner had moved his residence from the second ward of the city of Olympia and taken up his residence in another ward, and thereby he had disqualified himself as the councilman

of the second ward and his office as such councilman
had thereby become vacant; that the mayor and the
respondent had refused to recognize the petitioner and
to allow him to perform his duties as councilman, for
the reason that the office of councilman in the second
ward had become vacant by virtue of the petitioner's
act, before set out. A motion and demurrer were in-
terposed by the petitioner to the return and answer,
which were denied and overruled, whereupon the re-
spondent made a motion to dismiss the action for the
reason that the pleadings showed a contest with refer-
ence to the right and title to an office, and consequently
mandamus would not be the proper remedy, which
motion the court granted, and the petitioner has ap-
pealed from that decision.

The sole question in this case is whether the pe-
titioner has mistaken his remedy; whether the relief
which he seeks is to be obtained through mandamus or
*quo warranto*.

Section 1014, Rem. Comp. Stat. [P. C. § 8187], on
the subject of mandamus, provides that it may be is-
sued to compel the "performance of an act which the
law expressly enjoins as a duty resulting from an
office . . . or to compel the admission of a party
to the use and enjoyment of a right or office to
which he is entitled and from which he is unlaw-
fully precluded by such inferior tribunal, corporation,
board or person." The case of *State ex rel. Winsor v.
Mayor & Council of Ballard,* 10 Wash. 4, 38 Pac. 761,
is relied on as sustaining the right to the writ. An ex-
amination of that case, however, shows that, upon the
face of the record there, an illegal attempt had been
made to remove the petitioner, who was a member of
the city council of the city of Ballard. Under such a
record, no examination was necessary to determine

who was entitled to the office, and it clearly appearing that the petitioner was so entitled, he could enforce his rights by writ of mandamus.

This court has many times held that, wherever the title to an office, or the right to it, is involved, and where it is necessary to determine from the facts outside the pleadings as to who is entitled to the office, mandamus is not the proper remedy, but that the person claiming the office must resort to *quo warranto*. It is true that in most of those cases there has been a contest between two claimants to the same office, whereas, in the case at bar, no successor having been elected to the petitioner's office, there is no one other than he claiming the office. *State ex rel. McReavy v. Burke*, 8 Wash. 412, 36 Pac. 281; *State ex rel. Heilbron v. Van Brocklin*, 8 Wash. 557, 36 Pac. 495; *State ex rel. Blake v. Morris*, 14 Wash. 262, 44 Pac. 266; *Lynde v. Dibble*, 19 Wash. 328, 53 Pac. 370; *Kimball v. Olmsted*, 20 Wash. 629, 56 Pac. 377; *State ex rel. Dent v. McLennan*, 110 Wash. 16, 187 Pac. 408. The petition here shows that the title to an office is involved, and that is a question which may arise just as well where there is only one person asserting title as where there are two. That *quo warranto* and not mandamus is the proper procedure to determine a contest for office is clearly stated by this court in *Kimball v. Olmsted, supra*, where it is said:

"It is urged by the appellants that mandamus is not the proper remedy where the title to an office is in controversy, and such was the holding of this court in *Lynde v. Dibble*, . . . Respondent does not controvert the proposition, but contends that it is not applicable to the present case; and asserts that mandamus is the proper remedy to restore one to an office from which he has been illegally removed, and there is much authority to be found in support of his position. But we think that the rule for which the

respondent contends cannot be invoked where it does not clearly appear that the removal was illegal; and where the question of the legality is a disputed question, depending upon the construction of statutory provisions, mandamus is not the proper remedy. . . . In such a case it seems but reasonable that the law should require a form of procedure to be resorted to, which would require the incumbent of the office to be made a party and thereby enable him to be heard in his own behalf concerning his right to the office. Such a remedy is provided by chapter 2, §§ 5780 to 5787, inclusive, 2 Bal. Code. . . . relating to information in the nature of *quo warranto* . . . The provisions of this chapter furnish a full, complete and adequate remedy, and, in our judgment, the only appropriate remedy afforded by the law in cases like the present one.''

There are at least two Washington cases holding mandamus to be the proper remedy to restore civil service employees to their positions where it was claimed that they had been improperly removed. *State ex rel. Roe v. Seattle,* 88 Wash. 589, 153 Pac. 336; and *State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782. The only means by which these apparently irreconcilable creatures can be turned into one cage where they will lie in cordial intercourse, without dealing a death blow to one or the other species, is to reconcile them by holding that mandamus is the remedy by which to re-acquire a position for an employee, while *quo warranto* is the remedy by which to determine the right or title to an office by an official.

The petitioner, however, asserts that the question presented is not one involving the title to an office; that the office is his, and until he has been properly removed therefrom, the title is not involved. Section 9127, Rem. Comp. Stat. [P. C. § 797], subdivision (k) is to the effect that ''The removal of a councilman from the ward for which he was elected *shall create a*

*vacancy in such office."* It is relator's claim that his removal from the ward did not, *ipso facto,* create a vacancy, but that there must have been some determination, judicial or otherwise, of the fact of his removal in order to create a vacancy. The statute does not provide for any such proceeding, but by its express terms makes the act of removal of itself create the vacancy.

Statutes similar to this have been upheld and it has been decided thereunder that there is no necessity for an adjudication of vacancy prior to the one that might be had in the *quo warranto* proceedings. *Rumney v. Campton,* 10 N. H. 567; *People ex rel. v. Brite,* 55 Cal. 79; *Yonkey v. State ex rel. Cornelison,* 27 Ind. 236; *Curry v. Stewart,* 71 Ky. 560; *Barre v. Inhabitants of Greenwich,* 1 Mass. (Pick.) 129; *Prather v. Hart,* 17 Neb. 598. Throop on Public Officers, § 425, says, with reference to statutes which provide that the removal of an officer shall effect a vacation of the office, that "under such provision, it has been held, that the office becomes vacant, when the incumbent ceases to be a resident of the district; and that his successor may be appointed, without an adjudication that the office is vacant." Mechem on Public Officers, § 438, says:

"Where the law requires the officer to reside within the district which he represents, *and a fortiori* so where it expressly declares that his removal from the district shall create a vacancy, a permanent removal from the district represented will be deemed an abandonment of the office and a vacancy will result."

If this be the law, no adjudication was necessary to create a vacancy in the office of councilman of the second ward, and the pleadings raising a question of fact as to the title to an office which can only be determined by a trial, such question is not subject to determina-

tion in mandamus proceedings and must be settled by *quo warranto*.

It is argued, however, that the latter remedy is not available, as there is no other person who has been elected or appointed to fill the vacancy and the petitioner cannot maintain *quo warranto* proceedings against himself. Section 1034, Rem. Comp. Stat. subd. (2) [P. C. § 8398], provides that an information in *quo warranto* may be filed when any public officer shall have done or suffered any act which would work a forfeiture of his office, and § 1035, Rem. Comp. Stat. [P. C. § 8399], that an information in *quo warranto* may be filed whenever any one is claiming an interest in an office. Under the law, the prosecuting attorney of the county, on his own relation, or upon the direction of the court or other competent authority, or "any other person on his own relation," claiming an interest in the office, may file the information. The law would seem to provide ample opportunity for the petitioner to raise this question in the form of proceedings which this court has held is the only one where the disputed right and title to an office can be adjudicated, and in that proceeding, as was said by the supreme court of California in *People v. Brite, supra,* "the issue of vacancy or not can be, and is to be determined.   .   .   . The relator had his day in court in this action [*quo warranto*] upon that issue, and we see no necessity of a previous adjudication."

Judgment affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, and TOLMAN, JJ., concur.

FULLERTON, J., concurs in the result.

PARKER, J. (dissenting)—I am unable to agree with the conclusion reached by the majority. As I view the facts of this case, they do not present the question of

title to the office of councilman at all, but merely the question of relator's right to retain possession of the office of councilman and the exercise of his duties pertaining thereto; he being in possession of the office and never having been removed therefrom or adjudicated as not being entitled to the office by any court, body or person having jurisdiction to determine his qualification or right to the office. It is plain from the record before us that relator was lawfully elected to the office of councilman and was peacefully occupying and in possession of the office performing his duties incident thereto, when the mayor, evidently being of the opinion that relator had removed from the ward from which he was elected and thereby became disqualified, summarily refused to recognize relator's right to perform the duties of the office. By an express provision of our statute relating to the government of cities of the third class, to which class Olympia belongs, it is expressly provided that "the city council shall judge of the qualifications of its members." From a reading of the statutes relating to the government of cities of the third class, it is plain that the mayor has no voice whatever upon the question of the qualifications of a member of the council, whether such question arises upon the canvassing of election returns, upon removal proceedings in the council after election, or upon the arising of such question in any other manner.

It may be that the courts have jurisdiction, under certain circumstances, to inquire into the qualifications of members of the council concurrent with or revisory of the jurisdiction of the city council in that behalf; but it is, to my mind, clear that this pretended decision of the mayor upon that question is a mistaken usurpation of power on his part. To my mind, it is no more

within the power of the mayor to exclude a duly elected and acting councilman from the performance of the duties of that office than it is within the power of the chief of police of the city to do so by physical force. It is not a question of trial upon the merits of the question of relator being entitled to the office he seeks to retain, but is a question of the power of the mayor to interfere with the perfomance of the duties of relator as councilman, upon the theory that he is no longer qualified to hold the office.

If *quo warranto* is the proper remedy to inquire into the asserted right of relator to continue in the office of councilman, and the mayor is of the opinion that relator is not entitled to continue to exercise the duties of the office, that remedy should have been invoked by the mayor to test the right of the relator in the premises. Further, if *quo warranto* be the proper remedy to test relator's right upon the merits, and the merits are here, I am unable to see why the allegations of this complaint should not be treated as an information in that behalf. It seems clear to me the allegations of the complaint state a cause of action, viewed as such information. The necessary parties are before the court for the trial of the question of title to the office, if that be the real question here. Why not then so treat the complaint rather than a complaint or petition in mandamus, simply because the proceeding happens to be so designated by relator's counsel?

This apparently is a case within itself, not now of much importance, since it has to do with a term of an unsalaried office now nearly expired; but the power of the mayor assumed to be exercised and sanctioned by the majority of this court, it seems to me, is fraught with far-reaching evil consequences.

PEMBERTON, J., concurs with PARKER, J.

MITCHELL, J. (dissenting)—I dissent from the majority opinion. Because of the affirmative defense interposed by the respondent to the petition filed in the superior court, it should be stated that the petition alleged, among other things, that the petitioner "has not been removed from his said office of city councilman of the second ward by the city council of Olympia nor by anyone," that he is "eligible to the office to which he was elected, being a voter and a resident of the city of Olympia, Washington, and a resident and voter of the second ward of said city," and further, that no other person has been elected or appointed to said office and "that no one else is claiming said office." The salient feature of the affirmative defense to the petition is the allegation that, during his term of office, the petitioner disqualified himself as such officer by changing his residence to another ward, but there is no pretense of an allegation that the city council, which is the judge of the qualifications of its members, ever gave or offered him a hearing upon the charge or claim that he had disqualified himself as an officer by changing his residence.

Under that state of the pleadings, if the petitioner was not entitled to a peremptory order in his favor, he was at least entitled to try out in the superior court the controlling question of fact as to whether or not he had changed his residence. That issue was presented by the petition and joined by the answer. It was the one important thing and question of fact presented by the pleadings. In the case of *Watson v. Glover,* 21 Wash. 677, 59 Pac. 516, this court said:

"Under our system of pleading, the name or designation given a complaint is immaterial and unimportant. Its sufficiency must be tested by the allegations which it contains. In *Damon v. Leque,* 14 Wash. 253 (44 Pac. 261), we said: 'If a plaintiff sets forth

facts constituting a cause of action and entitling him
to some relief, he is not to be turned out of court be-
cause he has misconceived the nature of his remedial
right.' "

Speaking of mandamus, this court said, in the case
of *State ex rel. Brown v. McQuade,* 36 Wash. 579, 79
Pac. 207, as follows:

"It is a procedure under the Code, and any person
who has a cause that calls for its invocation has the
same right to sue out the writ as he has to commence
a civil action to redress a private wrong.  As we said
in *State ex rel. Race v. Cranney,* 30 Wash. 594, 71 Pac.
50, a proceeding in mandamus, ' . . . is a ju-
dicial investigation, the object of which is the deter-
mination of civil rights, the same as in any ordinary
proceeding; not only the determination of rights, but
their determination in such a way as to culminate in
an effective judgment.' In our practice, mandamus is
nothing more than one of the forms of procedure pro-
vided for the enforcement of rights and the redress of
wrongs. The procedure has in it all the elements of a
civil action."

If the appellant were questioning the right of an-
other to hold office, or if some other person had brought
proceedings to try out appellant's right to hold the
office, a different situation would be presented.  But
such is not the case.  Failure to observe this difference,
in my view, causes the apparent confusion now intro-
duced by the majority opinion.

Of the cases relied on in the majority opinion those
of *State ex rel. McReavy v. Burke,* 8 Wash. 412, 36 Pac.
281; *State ex rel. Heilbron v. Van Brocklin,* 8 Wash.
557, 36 Pac. 495; *State ex rel. Blake v. Morris,* 14 Wash.
262, 44 Pac. 266; *Lynde v. Dibble,* 19 Wash. 328, 53 Pac.
370; and *State ex rel. Dent v. McLennan,* 110 Wash. 16,
187 Pac. 408, were each a case wherein there were two
parties claiming the same office, that is, one party hav-

ing possession of an office, or the right of possession of an office, that was contested by the one who instituted the action; while the case in mandamus of *Kimball v. Olmsted,* 20 Wash. 629, 56 Pac. 377, was a controversy between two persons for the same office, and it was held by the majority opinion that the relator was entitled to no remedy under the rule, applicable in that case, of summary removal by the appointive power.

There is a very clear distinction in the different kind of cases and the rules applicable with respect to the proper remedy. In 22 R. C. L., Public Officers, under the sub-title of Legal Proceedings to Obtain Office, at § 111, p. 453, upon the subject of *quo warranto,* it is said:

"From a very early period of the law, the *invasion* of a right to hold and exercise the duties of a public office has been recognized as a legal wrong for which the law affords a remedy. The writ of quo warranto was an ancient writ to try the right of one *holding a public office,* and today an action of quo warranto, or an information in the nature of quo warranto, is the appropriate proceeding to try the validity of a title to a public office. The proceeding is now regarded as a civil remedy, *and it lies only against one who is in actual possession of the office.* Quo warranto lies to oust an illegal incumbent from an office, not to induct the legal officer into it."

While on the subject of mandamus with reference to the same general subject-matter, at § 112 of the same work it is said:

"Mandamus is not the proper proceeding by which to contest an election or to try a disputed question as to the title to an office. Yet a *duly elected public officer may have a writ of mandamus to secure recognition of his right to the office and in general a person entitled to immediate possession of an office under a prima facie title thereto may enforce his right by mandamus.*

*As regards reinstatements, mandamus is considered the proper remedy to correct an improper amotion from office and to restore to the full enjoyment of his rights a person who has been improperly ousted."* (Words italicized by the writer of this opinion.)

Such I understand to be the rule, from which it manifestly appears that *quo warranto*, technically speaking, is not a remedy which is applicable under the facts presented by the pleadings in the present case. At least, the rights of the parties and issues of fact presented by their pleadings should have been tried out in the superior court and a proper judgment entered, as the relator chose to tender those allegations of fact.