[No. 20033.  *En Banc.*  July 14, 1926.]

THE STATE OF WASHINGTON, *on the Relation of J. H. Davis, Relator*, v. PAUL H. JOHNS, *Respondent*.[1]

[1] OFFICERS (27)—STATES (8)—REMOVAL—NOTICE OF CHARGES AND TRIAL. Under constitution Art. 5, § 3, providing that officers not subject to impeachment shall be removable for misconduct or malfeasance in office in such manner as the legislature shall provide, and Rem. Comp. Stat., § 10989, providing that the governor may remove all such state officers appointed by him for misconduct, malfeasance or incompetency, upon filing a statement of his reasons with the secretary of state, the governor need not specify the acts of misconduct or malfeasance or state his reasons other than in the language of the statute. (ASKREN, MAIN and BRIDGES, JJ. dissenting.)

[2] COURTS (35)—STARE DECISIS—PREVIOUS DECISIONS AS CONTROLLING. Where a series of decisions uniformly construed an early act of the legislature, and many sessions of the legislature have intervened without any amendment of the law for a quarter of a century, the principle of *stare decisis* is binding upon the courts.

Information in *quo warranto* filed in the supreme court May 10, 1926, to try title to an appointive state office. Writ denied.

*Wright, Froude, Allen & Hilen, Preston, Thorgrimson & Turner, Chadwick, McMicken, Ramsey & Rupp*, and *Peters & Powell*, for relator.

*The Attorney General, Burkey & Burkey, Hayden, Langhorne & Metzger*, and *H. G. Rowland*, for respondents.

MITCHELL, J.—This is an action in the nature of *quo warranto* to try the title to the office of regent of the state university.

The information alleges that, heretofore, the then governor appointed the relator to the office for the term

[1]Reported in 248 Pac. 423.

of six years beginning on the second Monday of March, 1922, and that he accepted the appointment and qualified and ever since the second Monday of March, 1922, he has been a duly appointed, qualified and acting regent of the university; that on the 4th day of May, 1926, the governor filed with the secretary of state, and the secretary of state thereafter forthwith sent a certified copy by registered mail to relator of a certain purported order of removal, as follows:

"I, Roland H. Hartley, governor of the state of Washington, being satisfied that James H. Davis, duly appointed and acting member of the board of regents of the university of Washington has, in my judgment, been guilty of misconduct in office, do by virtue of the power in me vested hereby remove the said James H. Davis from his said office as said member of the board of regents of the university of Washington and the vacancy in such office existing by reason of such removal I do hereby fill by the appointment of Paul H. Johns of Tacoma, Washington, as member of the board of regents of the university of Washington for such unexpired term ending the second Monday in March, 1928.";

that on May 7, 1926, over the protest of relator, the respondent usurped the office, assumed and continues to perform the functions of the office to the exclusion of relator, who is rightfully entitled to such office; that, other than as set forth in the order, no charge has been filed against the relator, nor has he had any notice of charges against him, nor has any hearing been had as to any charges against him, nor any other order of removal served or filed; and that he has no knowledge or notice of what fact or facts, if any such there be, the governor considered constituted misconduct of which the relator is stated in the order to have been guilty. A general demurrer to the information has been filed.

The office in question is under the appointive power of the governor by and with the advice and consent of the senate. Constitution, art. 13, § 1. The power of removal is with the governor. Article 5, § 3 of the constitution provides:

"All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law."

Pursuant to the provisions of the constitution, the legislature, Session Laws of 1893, p. 247, enacted what are now §§ 10988, 10989 and 10990, Rem. Comp. Stat. [P. C. §§ 6650-6652]. The first section reads:

"The governor of the state of Washington is hereby authorized and empowered to remove from office all state officers appointed by him not liable to impeachment for incompetency, misconduct or malfeasance in office." [Rem. Comp. Stat., § 10988.]

The second section reads:

"Whenever the governer is satisfied that any officer not liable to impeachment has been guilty of misconduct, or malfeasance in office, or is incompetent, he shall file with the secretary of state a statement showing his reasons with his order of removal, and the secretary of state shall forthwith send a certified copy of such order of removal and statement of causes by registered mail to the last known postoffice address of the officer removed." [Rem. Comp. Stat., § 10989.]

The third section provides that, at the time of making the removal from office, the governor shall appoint some one to fill such office who shall forthwith demand and receive from the officer removed the papers, records and property of the state pertaining to the office, and shall perform the duties of such office. There is no contention in this case by counsel that a regent of the university is liable to impeachment.

[1]    Counsel for the relator, referring to former decisions of this court upon which counsel for respondent rely, have cited and quoted from later cases of this court, which they claim evince a modification of such former decisions. Those cases thus cited have been considered, and are found to have arisen where the officer sought to be removed and the applicable procedure therefor were distinctly different from those where the appointive and removal power lay with the governor. They are not in point. We are so satisfied they are not in point that we refrain from analyzing them or further distinguishing them, because we are convinced that the language in them now seized upon on behalf of the relator must yield to the maxim, not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used.

Without stating them as mentioned in the briefs, we think all points and contentions raised by the relator may be discussed by a consideration of former decisions of this court holding adversely to all such points and contentions. The first case, *State ex rel. McReavy v. Burke,* 8 Wash. 412, 36 Pac. 281, arose after the act of the legislature of 1893 for the removal of officers. It was a case of removal by the governor of a member of the state capitol commission, who had been appointed by the governor under the provisions of an act of the legislature approved March 21, 1893 (Laws of 1893, p. 462). The act provided for a commission of five members, three to "be appointed by the governor by and with the advice and consent of the senate." The commissioner removed, however, had been appointed after the legislature adjourned and there had been no confirmation. The case was decided in March, 1894. Tersely stated, it was to the effect that,

for the purposes of that case, the act of 1893 for the removal of officers not liable to impeachment, and certain parts of the act of 1893 creating the capitol commission, should be construed together and that, so construing them, the legislative intent was plain that the tenure of such appointive member should be indefinite and such officer liable to removal without a hearing for misconduct, malfeasance or incompetency, when the governor should be satisfied that any such cause existed.

The next case was *State ex rel. Howlett v. Cheetham,* 19 Wash. 330, 53 Pac. 349, decided May, 1898, adversely to the relator. He had been removed by the governor from the office of arid land commissioner, to which he had been appointed by the governor for a fixed and definite term under the provisions of the act. Session Laws of 1895, p. 452. In that case two distinctions were sought to be made over. the *McReavy* case. In the former, the term was for an indefinite time, here it was fixed; there, as it was argued, the validity of the removal act was not clearly settled by the opinion; here it was insisted "if the act of 1893 cannot be construed as providing for notice and a hearing on the causes assigned it is unconstitutional and void." In the opinion, the court said that the relator contended that the holding in the *McReavy* case *supra,* was in his (Howlett's) favor on the ground that the term here is a fixed and definite one. Answering the contention the court said:

*"But what was said in the opinion there with reference to the weight of authority upon the giving of notice and an opportunity to appear and defend in cases of fixed terms was as to those cases where the act did not provide otherwise.* Section 3, art. 5, of the constitution is as follows:

" 'All officers not liable to impeachment shall be sub-

ject to removal for misconduct or malfeasance in office, in such manner as may be provided by law.'

"The constitution left it entirely to the legislature. It is clear that the power of removal may be vested in the governor without any right of appeal, and in construing the act the court held that it provided for a removal by the governor without notice whenever he was satisfied that the incumbent had been guilty of misconduct or malfeasance in office, and that his action was not subject to the control of the courts, the intention being to provide for a summary removal of minor state officers without the delays occasioned by protracted litigation."

We have italicized certain of the language used, as it explains what the court meant by "the weight of authority," spoken of in the *McReavy* case, to the effect that it proceeded from those jurisdictions where there was an absence of such procedural directions as those contained in our written law. Another important statement in the language quoted, in the light of points raised in the present case, is "it is clear that the power of removal may be vested in the governor without any right of appeal," in a summary way.

Still another case is that of *State ex rel. Fay v. Easterday*, 20 Wash. 709, 54 Pac. 1135, decided November 18, 1898. The relator had been removed by the governor from the board of regents of the state university, as in the present case. He presented all the questions, pertinent to his case, that had been urged in the two former cases including the validity of the removal act, in his pleadings and written arguments. In the same manner he alleged and argued that the office of regent of the university was a constitutional office under art. 13, § 1, of the constitution and that an incumbent was not subject to summary removal by the governor. But this court, in a memorandum decision, held that the case was controlled by the decisions in the two former

cases. Each of the three cases was presented and decided upon a complaint tested by a general demurrer.

It is contended that the act of the legislature cannot be held to be constitutional nor an order or removal by the governor valid, except the order comply with the terms of the statute; and that, to effect a removal, the governor must set forth in his order facts or acts, and not simply conclusions which, in his judgment, constitute the misconduct complained of. It is said that this court has not held contrary to that contention and further that such course was not followed in this case.

In the *McReavy* case, *supra,* the substantive portion of the order was:

"I, J. H. McGraw, Governor of the State of Washington, being satisfied that John McReavy, a duly appointed and qualified and active member of the State Capitol Commission, has been guilty of misconduct in office, do by virtue of the power in me vested hereby remove the said John McReavy from his office as a member of the said State Capitol Commission, and the vacancy existing by reason of such removal I do fill by the appointment of Thomas Burke of King County, Washington."

The order of removal in the *Howlett* case is set out in full in the report of that case, 19 Wash. 330, 53 Pac. 349. The order in the *Fay* case was in the same form. The governor's order in the present case has already been given herein. It will be noticed that, in substance, the orders in the four cases are precisely alike. In the *McReavy* case, *supra,* this argument was made on behalf of the relator:

"One other question remains. If the court shall be of opinion that the general statute on the subject of removals furnishes the rule governing the action of the executive in this case, then the removal was not effected in the manner provided by that statute. The

order of removal did not specify the reasons for the removal. It is too manifest to require argument that the statute meant to require more than a statement of the statutory grounds for removal."

In the *Howlett* case, *supra,* the same contention was made, that is, that the removing authority must strictly pursue the terms of the statute, else his action is void, and then, upon reciting the order made by the governor in that case, it was said by the relator: "This document does not state the *facts* on which the action of the governor is based, but states the legal conclusion." In the *Fay* case a similar contention was made.

Now, the argument that we have not held contrary to the rule that to make an order valid it must "comply with the terms of the statute" and "set forth facts or acts and not simply conclusions" is made, as we understand, because there was no specific discussion of this point in either of the opinions in the three cases referred to. However, as already stated the complaint in each of those cases was challenged by a general demurrer which, of course, allowed the relator to claim that the terms or language of the governor's order did not comply with the requirements of the statute and that therefore the general demurrer should not prevail. That issue, among others, was distinctly presented by the relator in each case and decided adversely to him. It is, of course, the rule that where a litigant presents several issues in support of his demand for a single relief to a court, if the decision be in his favor upon a discussion of less than all the issues, it means that the issue or issues not discussed are not decided at all, but only those that are discussed. On the contrary, if the decision is against him, although the court may discuss less than all the issues presented, it means necessarily that all the issues presented have been con-

sidered and decided against him for the reason that if any one of them is valid he must prevail. On principle the situation is similar to that discussed in *Fidelity & Deposit Co. of Maryland v. United States,* 187 U. S. 315. It was a case in which the plaintiff moved for judgment under a rule of court for failure of the defendant to file with his plea a sufficient affidavit of defense. The defendant contended that the court had no power to enact the rule and that it was invalid, in that it deprived defendant of due process of law and the right of trial by jury. The court said:

"The rule was formerly number 75 and has existed a long time. The Court of Appeals of the District has sustained its validity in a number of cases. This court also sustained its validity in *Smoot v. Rittenhouse,* decided January 10, 1876.

"The case is questioned as authority because, it is said, that 'if this court upheld a rule of such important character and doubtful validity it would give the grounds of its decision.' But the objection assumes that the court had doubts. The better inference is that the court regarded the grounds of challenge to the validity of the rule as without foundation. And its validity was challenged and necessarily passed on, which disposes of the contention that the decision was based on another point."

[2] Such in effect is the present situation. Here are three cases in this court, in each of which the relator presented this very issue that had to be decided against him, else he was entitled to prevail. In each case he lost. Such decision was reached not simply once or twice, but three times. It is a series of decisions. The cases are records of this court. Two of them are called to our attention by the relator, and all three of them by the respondent. They are landmarks serving as precedents that we do not feel at liberty to ignore or disregard.

There is another view of the matter. It is a practical, recognized view. The section of the constitution referred to on the subject of removal of officers was not self-executing as to the manner of removal. The legislature was to provide for that. It did so provide by the act of 1893. The *McReavy* case, *supra,* involved an interpretation of that act and, while it was held that the order made by the governor in that case complied with the law, the opinion did not set out a copy of the order. Four years later, when the *Howlett* case was written, the governor's order in that case was written out in full in the opinion as reported. By that means the legislature, always watchful of the court's views in the interpretation and construction of statutes, was given to understand that that form of an order complied with the terms of the statutes, in the opinion of the court. That was the second time the statute had been presented to the court for interpretation, each case involving this precise question, and the course pursued in the *Howlett* case, *supra,* of setting out the governor's order was, by undeniable implication, equal to saying to the legislature that such an order complied with the terms of the law as the court understood the intention of the legislature. And still further, in the *Howlett* case, after referring to the construction of the law announced in the *McReavy* case, *supra,* significantly it was said: "Additional weight at this time is lent to that construction of the act by reason of the fact that several sessions of the legislature have been held since then and no change been made." That was said more than a quarter of a century ago since which time there have been fourteen biennial sessions of the legislature "and no change made." In all fair reason, we think it must be held that the situation is as if in the act of 1893 for the removal of officers, the form of the governor's order em-

ployed in this and the former cases had been set out
for the guidance of the governor, whereupon, according
to the doctrine of all those other cases no want of
validity in the act or regularity in the procedure can be
declared in the present case.

Nevertheless, neither have the authorities from other
states cited on behalf of the relator been overlooked.
As we see it no useful purpose can be accomplished
by discussing them. The particular procedure or cir-
cumstances in each of those cases controlled. A large
percentage of such cases were before this court in the
consideration of our former cases. We cannot refrain,
however, from mentioning more particularly the case
of *People ex rel. Emerson v. Shawver,* 30 Wyo. 366, 222
Pac. 11, spoken of by counsel as a very recent one and
"probably the best case upon the subject under discus-
sion." That case contains an elaborate discussion of
many things, some of which are foreign to the ques-
tions here. It was a case involving the validity of an
order of removal by the governor of the state engineer.
Section 19 of art. 3 of the constitution of that state,
like the provision of our constitution on the subject,
provided: "All officers not liable to impeachment shall
be subject to removal for misconduct or malfeasance in
office, in such manner as may be provided by law."
An act of the legislature of that state purported to
give the governor much broader power as to causes
for removal than did the constitution. It was held by
the court that the statute, in so far as it attempted to
authorize a removal for other than misconduct or mal-
feasance in office, as stated in the constitution, was
void as affecting the office of state engineer created by
the constitution. It was further held that the miscon-
duct or malfeasance, for which such an officer might
be removed, pertained only to acts or omissions re-
lating to the performance of official duties. The opinion

sets out the order of removal, from which it appears that it contains no language which *eo nomine* or its equivalent is found in the constitutional provision or applicable portion of the statute. On the contrary it is a long, somewhat involved statement of grievances, of which the court said: "The relator is charged in that statement, and also in the statement directed and sent to him, with having allowed his commission as state engineer to be presented to the senate for confirmation without the governor's knowledge or consent. That is all." And it was held by the court that that conduct did not at all relate to official conduct of the state engineer as contemplated by the removal law, and hence the order of removal was invalid. That is, it was a case wherein the statement of the governor was entirely beyond and without the scope of the law. That, of course, presented a situation or case subject to judicial inquiry. Such is not the situation in the present case.

We appreciate counsel's criticism of the operative effect of our law, thus interpreted and applied, with regard to the embarrassment caused reputable persons upon being removed from office. The same arguments were made in all of the other cases. That, however, has to do with the policy of the law, within the control of the legislature, and with which the courts have nothing to do in the absence of the invasion of some guaranteed right which we cannot find in this case under the uniform holdings of this court in the former cases.

The respondent's demurrer is sustained. As we understood at the hearing, the relator does not desire to amend his pleadings.

Writ denied.

TOLMAN, C. J., FULLERTON, PARKER, and HOLCOMB, JJ., concur.

ASKREN, J. (dissenting)—I yield ready concurrence to that portion of the majority opinion which holds that this court has previously decided that the governor has power summarily to remove, without notice or a hearing, all state officers appointed by him not liable to impeachment (of which a regent of the state university is one), and that therefore the questions presented by relator, which seek to modify or change the law there announced, should be deemed to be settled. It is not wise to unsettle the law of the state nor the construction of its statutes.

But I find myself wholly unable to agree with the doctrine of the majority opinion upon the more important point involving the necessity of the order of removal following the provisions of the statute. The statute [Rem. Comp. Stat., § 10989], provides:

"Whenever the governor is satisfied that any officer not liable to impeachment has been guilty of misconduct, or malfeasance in office, or is incompetent, he shall file with the secretary of state *a statement showing his reasons* with his order of removal, and the secretary of state shall forthwith send a certified copy of such order of removal *and statement of causes* by registered mail to the last known postoffice address of the officer removed." [Italics ours.]

It will be seen that the legislature has required the governor to file with the secretary of state "a statement showing his reasons with his order of removal," and that "a copy of such order of removal and statement of causes" shall be sent to the officer removed. It is conceded that the order of removal did not comply with the statute, unless the words "has been guilty of misconduct in office" are construed to be "a statement showing the reasons" and "a statement of causes." That they cannot be so construed I shall presently show, but wish first to state my reasons for

failure to agree with the majority that the question has been previously decided. It is admitted that in none of the three cases referred to in the majority opinion, and heretofore presented to this court involving this statute, was anything said in the opinion regarding this question. How, then, is it determined that the court decided this question? By resort to the briefs of the parties filed at the time of the hearing of those cases. But I cannot believe that the law decided in a given case is to be determined by the briefs rather than the deliberate written decision of the court. I fail to find any analogy between the case of *Fidelity & Deposit Co. of Maryland v. United States,* 187 U. S. 315, cited in the majority opinion, and this case. The quotation from the opinion in that case shows that the court had sustained the validity of the rule in question, but failed to give the grounds of its decision. In the present case the validity of the order, so far as the statement of reasons was concerned, was never sustained in any case, if we can rely upon the written decision of the court.

When every court, that has had this same question presented to it, has decided that relator's contention was so meritorious that it must be upheld, even though it required the setting aside of an order promulgated by a coordinate branch of the government (a thing not lightly to be regarded), it will not do for us to say that, in all three of the cases cited, this court not only decided against the relator, but deemed the contention so devoid of merit as to be unworthy of discussion. It is, of course, true that, where a party to an action has presented several questions in his brief, any one of which would necessitate a reversal of the trial court, and the decision is against him, it will be presumed as to him, and to him only, that the court decided against all his contentions, although no men-

tion is made in the decision of some of them. He cannot thereafter raise these questions, for the decision states the law of the case presented. But it has no binding effect, except as to the particular litigant, and states no rule of law for the guidance of other courts or the bar of the state. A decision which does not even refer to a question, and in which the court that rendered it cannot find an expression indicating in the slightest degree that the question was before it, cannot be said to be a decision thereon, nor to state any law with reference thereto. One illustration will suffice: It is said that there is a sufficient reason for holding that the court did decide in the *McReavy*, *Howlett* and *Fay* cases, *supra*, that the order complied with the statute in this: that the order in the *Howlett* case (similar to the one here in question), was set out in full in the decision, and thereby the legislature were given to understand that such an order complied with the statute, and the legislature has not seen fit to change it. But legislatures can have no greater knowledge of a decision of the court than do the members of the bar of the state generally. The decision in each case expressly held this, and this only: That the relator was not entitled to a notice and a hearing, whether the term of office was for a definite or an indefinite period. How, then, can it be assumed that the legislature understood that the court decided a question not referred to in the decision? Shall they also resort to the briefs instead of to the opinion to find out what the decision was? Certainly not.

I have stressed this point not so much because of its practical effect in the instant case, but because it undermines every decision of this court, and, if followed, no member of the bar of the state can safely rely upon any of our decisions without first inspecting the briefs that were filed.

But there is a greater and more compelling reason why we should not hold that the particular question was even considered by the court in either of the three cases cited, viz.: to have decided that the order did comply with the statute would be not only to disregard the plain words of the statute, but to fly in the teeth of the decisions of practically every court that has decided the question. No court disregards the plain words and evident intent of a statute without stating in its decision what appears at least to it a compelling reason therefor. No court decides against the over-whelming weight of authority from other jurisdictions without attempting to show that the weight of authority is unsound, and stating a refusal to be bound thereby.

Turning our attention to the statute, it may be well to consider the argument made by counsel for defendant that an order which specifies that removal is made because of "misconduct in office" is a "statement of reasons" and a "statement of causes," as required by the statute. It was said that the words are to be construed synonymously,—the words were so used in the order. Using them synonymously, what is the effect? The statute says the governor may remove for misconduct in office and that, in his order of removal, he shall state the reasons. Look at the result: "I remove you because you have been guilty of misconduct in office, and my reason is that you have been guilty of misconduct in office." Can anything more be required to show the utter futility of such a construction?

But there is another way to determine whether it was the intent of the legislature to use the words synonymously, and that is, to consider the purpose sought to be attained.

The Constitution provides that:

"Removal from Office: — All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office in such manner as may be provided by law." Const. art. 5, § 3.

It is apparent at once that, acting under this provision, the legislature would not have the power to provide that such officers as were not liable to impeachment could be removed at the will or pleasure of the chief executive.

But waiving for the moment such a constitutional prohibition, and assuming that no restriction existed, it will be seen that the legislature had three methods to choose from in providing for removal of such state officers: First, after notice and a hearing upon the charges; second, by summary removal after a determination by the governor that the charges were true; and third, by summary removal at the will or pleasure of the governor.

We have already decided in the *McReavy, Howlett* and *Fay* cases, *supra*, that the legislature did not intend to provide for removal by the first manner specified, and it is not even contended by defendant that it was intended to be exercised under the third specification. Since, therefore, the removal was not to be after notice and a hearing, nor to be at the will of the chief executive it follows that it was intended as a summary removal after determination by the governor that the charges were true, and that any construction which has the effect of either requiring notice and a hearing, or of permitting removal at the will of the governor, is not to be countenanced. The refusal to allow removal at the will and pleasure of the governor demonstrates a clear intention to place a limitation upon the exercise of that power. Therefore, the statute provides that whenever the governor is satisfied that the officer has been guilty of misconduct or malfeasance

or is incompetent he may remove. There is no limitation upon the manner in which the fact of incompetency, misconduct or malfeasance may be determined. He may investigate in any manner he sees fit, and, if he is satisfied of the existence of facts which amount to incompetency, misconduct or malfeasance, he may summarily remove. Nor will courts interfere with his findings. He may decide wrongly, but there is no relief, if the facts which he finds to be true are such as amount to a specification of removal under the statute.

Now it is at once apparent that, if the executive may say in the order of removal that the officer is guilty of "misconduct in office," there is no limitation whatsoever upon the power. Suppose, for instance, that a governor should desire to remove for political reasons, or for reasons which he erroneously deems amount to misconduct in office, all that he need do is file an order of removal reciting that the officer is removed for "misconduct in office." Of course, the court will not assume that the order in this case was made for any reason other than because of the existence of actual facts found by the governor, which amount to "misconduct in office." The high position which he holds under the mandate of the people of this state should be sufficient assurance to us that the order was made only after sufficient facts were found by him. But neither the court nor the people can know whether the power was rightfully exercised, unless the limitations in the statute be observed and the facts stated in the order of removal as required. Nor is the limitation prescribed by the statute without its direct benefit to the governor. In times of political upheaval, there is always a tendency to question the good faith of removals. Especially is this true, when the official removal has been appointed by a former governor and his term of office has not expired. If the removal be made because

of drunkenness, immorality or any other act which amounts to misconduct in office, the electorate will readily concede the justice thereof, and approve the dismissal from office. On the other hand, the custom of removing officials appointed by a previous adminis- tration, for no other reason than a natural desire to replace them with officers of their own choosing, is so well known to the public that, if removal be made on the mere statement that the officer has been guilty of misconduct in office, it will be variously believed that a real ground of dismissal did not exist, else it would be stated.

A just and proper decision herein is of the highest importance, for we are prescribing the proper method of the exercise of the power of removal by the chief executive, not for the present, but, in the absence of further legislative enactment, for all those who follow.

It is not at all inconceivable that future executives, relying upon the majority decision, will remove from office for personal or political reasons under the blanket indictment, "misconduct in office." The his- tory of legal literature is replete with such attempted usurpation of power, and it is our duty, distasteful though it may be in the present case, because of our high regard for the incumbent, to guard against such action by a proper interpretation of the statute.

An investigation of the cited cases discloses none from any jurisdiction where a court has held that the legal conclusion, "misconduct in office," was a suf- ficient statement of the reasons for removal. In some of them the question was not decided, but in every case where reference has been made to the provision re- quiring a statement of reasons, the court has stated that it was to effectuate a limitation upon the power.

It would be a work of supererogation to attempt to call attention in a dissenting opinion to all the cases

dealing with the question here involved. But reference to a few of them may be made with profit.

In *State ex rel. Hamilton v. Grant,* 14 Wyo. 41, 81 Pac. 795, 82 Pac. 2, 116 Am. St. 982, 1 L. R. A. (N. S.) 588, a superintendent of a water division of the state of Wyoming was removed by the governor for incompetency. The governor stated his reasons for finding that the superintendent was incompetent, by detailing facts which showed incompetency. The constitutional provision of that state providing for removal from office is identical with our own. Pursuant thereto the legislature of that state passed an act which, upon comparison with our own, will show that it gave the governor far greater power than ours, but is almost identical with regard to requiring the reasons for removal. It follows:

"Any officer or commissioner of the state of Wyoming who shall hold his office or commission by virtue of appointment thereto by the Governor, or by the Governor by and with the advice and consent of the Senate, may be removed by the Governor from such office or commission for maladministration in office, breach of good behavior, willful neglect of duty, extortion, habitual drunkenness, or any other cause deemed by the Governor to justify and warrant such removal; provided, reason for such removal shall be filed in the office of the Secretary of State in writing, subject to inspection by any person interested."

The superintendent claimed that he could not be removed without notice and a hearing. The court held that this contention was not well founded, saying:

"From an examination of the authorities, therefore, it seems correct to say that when the Legislature has conferred power on the Governor to remove an appointive officer having a definite term, and the statute does not provide the procedure, it will not be presumed that such removal may be made without notice and a hearing; but if the authority is expressly given to

proceed summarily, no such notice is necessary.  If, therefore, the statute under which the removal was made in this case had closed at the semicolon before the proviso, it might be a question whether notice to the officer and a hearing on charges might not be required.  But the Legislature, having declared that removals may be made, proceeds to prescribe the method or conditions under which such removals may be made. Having conferred the power upon the Governor in language which is plenary, it adds: 'Provided, reason for such removal shall be filed in the office of the Secretary of State in writing, subject to inspection by any person interested'—*thereby declaring the express conditions and limitations under which the Governor may act.*  Having entered upon the realm of limitation, the enumeration of one condition precludes the idea that there should be others not expressed. ' *Expressio unius est exclusio alterius.*' To our minds the language of the proviso is inconsistent with the idea of a hearing. *The sole restraint upon the action of the Governor is the filing of his reasons for the removal and the consequent check of public opinion.*  [Italics ours.] . . . There is no claim advanced by counsel for relator that the reasons assigned by the Governor are not such as, if true, would constitute maladministration or misconduct in office, and they seem to us to be well within these terms."

In *O'Dowd v. City of Boston,* 149 Mass. 443, 21 N. E. 949, an employee on a city ferry boat questioned the right of the city board to discharge him, on the ground of drunkenness, without notice and a hearing.  The statute provided that the "Board might remove such subordinates for such acts as they might deem sufficient and shall be assigned in their order for removal."

It will be observed that the relator there was discharged for drunkenness, which is a statement of the reason, or a statement of fact, and not a legal con-

18—139 WASH.

clusion. The court held that no notice and hearing were required. The court said:

"If it was intended that the removal was to be upon charges and an adjudication, there was no occasion to say more than that it was to be for cause, and especially none for the requirement of an order for removal in which the cause should be assigned. There must be a cause in fact for every removal, though in a removal at pleasure no cause need be given, and none can be judicially known. The intention of the statute seems to be to qualify a removal at pleasure, by requiring a record to be made of the cause."

The court thereupon states the reason back of the limitation, as follows:

"In adopting a new rule applicable to all cases, we do not think that the language of the statute indicates an intention to adopt the former rule of removal at pleasure, or the former exception to it, of a technical removal for cause, but to allow summary removals without hearing, with the condition that the cause of the removal should be put on record. *This would naturally have an effect to prevent improper removals, and, in case of a removal for cause for which it could not lawfully be made, would make redress possible, giving to the person removed the same remedy he would have had the removal been for satisfactory cause found after a hearing.* It may be doubted whether there would be much benefit to either officers or subordinates in a compulsory hearing before an absolute power which would not voluntarily give a hearing when justice required it. With or without a hearing there is a record of cause of removal and the appeal in either case is to public opinion." [Italics ours.]

In *Hoffman v. Yoe,* 9 Kan. App. 394, 58 Pac. 802, a regent of the state agricultural college of Kansas brought suit in *quo warranto* to retain his seat as a regent after being displaced by an order of removal signed by the governor, and another appointed in his

place. The law of Kansas provided for a hearing upon·
the· charges, so that the court's decision upon that
question is not authority in the instant case; but the
reasoning advanced by the court for holding that the
statute relating thereto should be strictly followed is
not only enlightening, but so manifestly just, as well·
as applicable to the present case, that we quote there-
from:

"The reputation of a citizen of the state, holding an
office, ought not to be besmirched, a stigma of reproach·
fixed to it and the citizen deprived of a valuable right,
except for some serious misfeasance or nonfeasance
in respect to his office; or some conduct of immorality·
that renders him unfit for its performance. Otherwise·
honorable men would be deterred from accepting an·
office, and serving the state to its best interests. The
state would be deprived of the services of its best .
citizens, and its interests turned over to political ad-
venturers and speculators in public office. It is evi-·
dent that the Legislature did not intend that these
state officers should be at the caprice or mercy of the
chief executive, or of a legislative committee convened·
at his suggestion."

In *Underwood v. Board of County School Commis-*
*sioners,* 103 Md. 181, 63 Atl. 221, there was presented
to the court the question of whether trustees of a
school district could remove a school teacher under a
notice which stated:

"We, the undersigned trustees of above named
school believe it for the best interest of the school
that we notify you that your services as teacher of the.
aforesaid school will not be required after the 10th.
day of October, 1904."

The laws of Maryland in effect at the time of the
removal provided that,

"Said teachers may be removed at any time said·
board of district school trustees may think proper,
after thirty days notice in writing; provided further,

that the said board of district school trustees shall furnish in writing when required by the teacher so notified the reasons for dismissal."

The court in holding that the statement, that "it was for the best interests of the school" that the teacher be dismissed, did not state any reasons for dismissal, said:

"Unless the reasons are given the public may think it was because the teacher was incompetent, or possibly it might affect the standing of such teacher in other respects. Therefore, when the Legislature made this change in the law, it meant something, and could not be complied with by such a reply as was given by these trustees—'We believe it for the best interests of the school.' That might be because the teacher was incompetent, not sufficiently educated, bad-tempered, unhealthy, of questionable character, of some political or religious faith not satisfactory to the trustees, or for one or more of many reasons that might be suggested. Mrs. Nally acted promptly in calling for reasons, and the county board ought to then have required them to be given. The letter of September 10th furnished none, other than might have been read into the notice of September 8th; for, if the trustees had a proper conception of their duties, it would be presumed that they believed it was for the best interests of the school that she be notified, else they would not have done it; but *why* they did so believe this statute required them to disclose, when called upon by the teacher."

The most recent case involving this question is *People ex rel. Emerson v. Shawver,* 30 Wyo. 336, 222 Pac. 11. That was an action in *quo warranto,* where one who had been removed as state engineer brought an action to determine his right to the office. The statute in force under which the governor removed the engineer was the same as the one which we have set out in *State ex rel. Hamilton v. Grant, supra.* In that case the governor set forth his reasons for the dis-

charge of the state engineer in detail. The court, upon
investigation, found that they were not such as to
amount to misconduct or misfeasance in office. The
majority opinion seeks to distinguish that case upon
the ground that, since the conduct of the appointee
complained of did not relate to the official conduct as
contemplated by the removal law, the case presented
was one subject to judicial inquiry. This is but an-
other way of saying that, if the governor in that case
had merely said in the order that the engineer was
removed for misconduct in office, the removal would
be valid, but if the governor gave his reasons therefor
it would be invalid. This, in effect, is to deny the pur-
pose of requiring reasons to be stated. A short quota-
tion from the opinion will show that the court did not
base its decision upon such ground. After quoting
approvingly from *State ex rel. Hamilton v. Grant,
supra,* where it was held that no notice and hearing
upon the charges were required, the court called spe-
cial attention to the following language from that case:

"There is no claim advanced by counsel for relator
that the reasons assigned by the Governor are not
such as, if true, could constitute maladministration or
misconduct in office, and they seem to us to be well
within those terms."

The court then proceeds:

"Thus it seems that the court then deemed it neces-
sary to the validity of the removal proceedings that
the *reasons assigned shall be such as to constitute mis-
conduct or malfeasance in office.* And, upon a careful
consideration of the question in this case, the court is
now of that opinion. Indeed, it is conceded that the
court may inquire into the facts of the removal to de-
termine whether the Governor has kept within his
jurisdiction, and, therefore, whether the cause assigned
is one for which the removal is authorized by law.
And we agree with the respondent's contention that
judicial cognizance of the Governor's action does not

reach beyond the jurisdictional inquiry. But that the court may go that far, where the removal is authorized only for cause or for causes specified in the Constitution or statutes, is, we think, well settled; at least that is the prevailing rule, and we think more reasonable than a rule denying the right of judicial inquiry or review in such cases. That is to say, the court may inquire into the existence of the jurisdictional facts among which are:

" 'Whether the charges upon which the removing power acted were legal cause of removal, or whether the cause was sufficiently specified.' 22 R. C. L. 574; 29 Cyc. 1410; 23 Ency. Law (2d Ed.) 429; Mechem on Pub. Off. Sec. 456; Throop on Pub. Off. Secs. 392-398; *Village of Kendrick v. Nelson,* 13 Idaho 244, 89 Pac. 755, 12 Ann. Cas. 993; *State v. Hawkins,* 44 Ohio St. 98, 5 N. E. 228; *State v. Hay,* 45 Neb. 321, 63 N. W. 821; *State v. Frazier,* 47 N. D. 314, 182 N. W. 545.

" 'An officer exercising such power, . . . acts in a *quasi judicial* capacity, and the matter of procedure must be of a *quasi judicial* character, and as the officer is an inferior tribunal, as such he must be amenable to the court when acting in excess of the jurisdiction conferred. . . . Neither this nor any of the numerous authorities go further than to hold that excess of jurisdiction is jurisdictional. Whether the Governor, exercising the power of removal, acquired jurisdiction to act and proceed to a finality without excess of jurisdiction, may be inquired into whenever the result is called in question collaterally or directly.'

"In a note to *State ex rel. Kinsella v. Eberhart,* 39 L. R. A. (N. S.) 788, it is said:

" 'But it seems that the courts will look into the question of the Governor's power and jurisdiction, and of the legality of existence of the ground assigned by the Governor.' "

These cases correctly announce the principles applicable to the construction of the statute here involved and, in the performance of our duty of interpreting the law, we should so hold.

It may be said that, if it be assumed that facts existed which justified the governor in determining that the relator was guilty of misconduct in office, then the only result of an adverse decision herein would be that the governor would then file a new statement which would show his reasons and, since we will not question his findings if they are such as amount to misconduct in office, this proceeding cannot avail to keep relator in his office as regent. It may be admitted that such would be the practical effect thereof. But such an argument leaves out of consideration the very vital interest relator has in requiring that the record state what things he has done that amount to misconduct in office. It may well be doubted whether relator seriously desires longer to hold an office which, involving sacrifice of time, energy and money, returns no reward other than that contained in the satisfaction of having served the state. But that no man of spirit will permit his good name to be publicly besmirched, if he can honestly avoid it, is too well known to require argument. If the legislature had left the removal at the will or pleasure of the governor, no stigma would attach by a removal before the expiration of the term of office. But when the order of removal is such as to make a public record of an absolute finding of guilty of misconduct in office, it is but bare justice to say that to the sacrifice of time, energy and money there shall not be added that of one's good name, unless facts can be stated which justify it. It would be far easier to obtain the services of able men when the dismissal is at the will of the governor with all its attendant precarious political tenure than under the construction we have now given this statute, which does not allow removal at will, but requires a record of guilt without any finding of fact which the relator may deny, and which compels him, in order to attempt to maintain his

good name and standing in the state, to search in vain for a cloud of unknown witnesses that he may deny everything in general and nothing in particular.

With respectful deference to the opinion of the majority, I must decline to follow it. The order of removal should be set aside, with permission to file a new one setting forth the reasons for the removal.

MAIN and BRIDGES, JJ., concur with ASKREN, J.

MACKINTOSH, J., was unable to participate in this case.