[No. 22551. Department One. August 21, 1930.]

LILLIE MAY POLK, *Appellant*, v. JOHN L. POLK, *Respondent*.[1]

*Long & Hammer*, for appellant.
*James E. Bradford*, for respondent.

MILLARD, J.—This is an action by a wife for divorce from her husband upon the grounds of cruelty, non-support and desertion. While of the opinion that "the

[1]Reported in 290 Pac. 861.

plaintiff had for many years been subjected by the defendant to cruel treatment, such as would, beyond peradventure of a doubt, entitle her to a divorce from him upon that ground," the trial court found that the plaintiff had not been a resident of this state for the required statutory period of one year (Rem. Comp. Stat., § 984) immediately preceding the commencement of the action, and entered a judgment of dismissal, from which the plaintiff has appealed.

Respondent and appellant intermarried in Seattle in 1918, purchased a home in that city the same year, and continuously resided there until March, 1927. Being unemployed in March, 1927, respondent accepted the invitation of appellant's mother to visit her on a farm near Bovina, New York. Respondent's family, consisting of himself, appellant, and their three children, resided on the New York farm until September, 1927, when the owner of the farm and the respondent disagreed as to the amount of compensation due the respondent. The respondent departed from the farm and went to Fort Lee, New Jersey, near the home of his mother. Obtaining employment at that place, he rented a cottage which he occupied with his mother: and from that time to the present respondent has continuously resided there.

In December, 1927, appellant, with her youngest child, went from Bovina, New York, to the New Jersey home of the respondent for the purpose, she claimed, of recovering from the respondent a few articles that were of sentimental value to her. She remained at that place approximately two weeks, during which time she was subjected by respondent to indignities that were unbearable. She separated from her husband in New Jersey, returning to her mother's home in New York State.

A few weeks subsequent to her departure from New Jersey, she retained Seattle counsel to represent her in her action for divorce. In February, 1928, she verified her divorce complaint which was filed April 3, 1928. In August, 1928, appellant came to Seattle from New York to testify at the divorce hearing. Immediately following the hearing, she returned to her employment in New York State and has been in the State of Washington only once since that time—November, 1929, when she was present at the second hearing of her action for divorce.

By mistake, service of summons by publication was had upon the respondent, based upon an affidavit made by an attorney employed in the office of appellant's counsel, the attorney not knowing that appellant had informed her counsel of respondent's New Jersey address. Based upon the affidavit of publication, a default was entered against the respondent; and in August, 1928, an interlocutory order was entered directing the granting of a divorce to the appellant. Learning of the proceedings, respondent, petitioned, as did appellant (who denied any fraud on her part or intention to deceive the court), that the default be set aside and the case set down for trial upon the merits. The application was granted. Respondent answered, denying the material allegations of the complaint and challenging the jurisdiction of the court to hear the action on the ground that the appellant was not a bona fide resident of this state. The trial of the cause in November, 1929, resulted in dismissal of the action as above recited.

Counsel for respondent argues that respondent established his residence in New Jersey and that appellant thereby lost her residence in Washington. Counsel further argues that it was necessary for appellant to reestablish her new residence in Washington for

one year after December 26, 1927 (the date she left her husband after living with him in New Jersey for approximately two weeks), in order to confer jurisdiction upon the courts of this state.

 Was appellant a resident of this state for one year immediately preceding the commencing of her action April 3, 1928, for divorce? That is the determinative question in this case.

Requisite to the maintenance of this action, was residence of one year immediately preceding the commencement of the same.

"Any person who has been a resident of the state for one year may file his or her complaint for a divorce . . . in the superior court of the county where he or she may reside, and like proceedings shall be had thereon as in civil cases." Rem. Comp. Stat., § 984.

Appellant does not concede that she ever lost her residence in Seattle. She contends that she never acquired a permanent home elsewhere, and that it was her intention to return to Seattle within a year or two when her boys would be able to assist her in paying the mortgage on the Seattle home.

What are the facts as to the residence of appellant and respondent as a marital community and separately? From 1918 until March, 1927, they continuously resided in Seattle. From March until September, 1927, they resided with appellant's mother in Bovina, New York, because respondent had lost his employment in Seattle. Prior to his departure from Seattle in March, 1927, the respondent notified the Civil Service Commission of Seattle that his temporary address would be Bovina, New York. In April, 1927, he informed the Seattle Civil Service Commission as follows:

"Am writing to advise not to send for me this coming vacation season for temporary work as I am here settling up an estate and will be until next January."

Respondent was advised September 18, 1928 (five months after appellant commenced her action for divorce and nine months subsequent to December, 1927, when appellant left him for the last time) by the Seattle Civil Service Commission, that his eligibility for employment with the city would soon expire. Did he then state he was a resident of New Jersey? He did not. He replied to that letter, as follows, declaring his intention to retain his Seattle residence for the purpose of maintaining his status as a potential civil service employee of Seattle:

"Will be in Seattle next year. In the meantime my address is 5 Windmore Avenue, Hillside, New Jersey. If not asking too much please keep me on the list."

At the present time, the parties have stored with a neighbor in Seattle two boxes of dishes, a table, chairs and rugs which the respondent placed in storage in March, 1927, when departing for the home of his mother-in-law in New York State. At that time, respondent informed the neighbor that he and his family would return as soon as the Seattle Civil Service gave him employment. On the morning of his departure for Bovina, he told another neighbor:

"We are going to Lillie's folks on the farm but we will be back. I am going down there to wait until they call me for the Civil Service and then we will be home."

Listing their home with a real estate agent for rent, the respondent stated that he and his wife intended returning to Seattle and they desired the place when they returned. The Seattle home has not been sold, nor has any attempt been made to dispose of it. In September, 1927, the respondent went to New Jersey

where he obtained work and lived in a cottage with his mother. His wife went to him from Bovina, New York, in December, 1927, remaining only ten days to two weeks as she could not longer endure his cruelty. She returned to her mother's home in New York State. Shortly, thereafter, she communicated with Seattle attorneys for the purpose of obtaining a divorce. She was employed from April, 1928, to October, 1928, at Oneonta, New York, her children living with her mother at Bovina. From October, 1928, until April, 1929, she was employed in Florida as a hair-dresser. When the season closed in Florida, she worked at a summer resort at Stamford, New York. She did not establish a home at any of these places. She was working when and where she could and expending her income for the support of her three children. In October, 1928, two months subsequent to the entry of the interlocutory order of divorce, she entered into a contract of marriage with a man in New York State. In the application for the marriage license, she gave her residence as Bovina, New York, and her new husband stated his residence was in Florida.

The averment of the respondent in his deposition that he established his home in New Jersey in 1927, and that from September, 1927, he had determined that New Jersey was his home, is hardly consistent with his reply to the September, 1928, letter from the Seattle Civil Service Commission relative to respondent's status. That reply, when read in the light of the fact that respondent registered and voted in New Jersey May 15, 1928, four months prior to requesting retention of his name on the eligible list in Seattle, brands the respondent as a man unworthy of belief. Registering and voting five months subsequent to the last time (December, 1927) his wife was with him suggests the thought that the respondent was thus en-

deavoring to acquire a residence in New Jersey for the purpose of defeating the action for divorce which he at least knew his wife contemplated.

Respondent did not acquire a domicile in New Jersey prior to the date he registered and voted May 15, 1928. What his intentions were prior to that time we do not know, nor would we believe his testimony on the subject, in view of his attempt to retain his name on the Seattle eligible list four months subsequent to the date he voted in New Jersey. It is very probable that respondent registered and voted in New Jersey for the purpose of making that state his and his wife's domicile and thereby defeat her suit for divorce which he knew in December, 1927, she intended filing.

Both parties were residents of Seattle at the time of their separation from each other in New Jersey December 26, 1927; and they were residents of Seattle on April 3, 1928, when appellant filed her complaint for divorce. Appellant still claims Seattle as her residence. Until the contrary is shown—and the burden of proving to the contrary is upon the party (respondent) alleging it—the presumption is that Seattle has continued to be her domicile.

"A residence once established continues until a new one is acquired; a change of residence does not consist solely in going to and living in another place, but it must be with the intent of making that place the permanent residence. The temporary absence from the state of one domiciled there will not be held a change of residence, unless to the fact of residence elsewhere be added the *animus manendi;* for a domicil, having once been acquired, continues until a new one is actually acquired *animo et facto.*" 9 R. C. L. 403.

There is no evidence showing that the appellant ever acquired a residence in New York or elsewhere than Seattle; nor had the husband acquired one in

New Jersey when his wife separated from him in December, 1927. They intended separating when he was arranging to go to her mother's home in New York in March, 1927. When appellant endeavored to live with respondent in New Jersey in December, 1927, and could not do so because of his cruelty, she returned to her mother's home in New York State. She was employed, as stated above, in Bovina and other places from time to time, but at no place did she acquire a permanent residence.

The decision of the respondent to make his home in New Jersey and vote there came subsequent to December, 1927; in fact, subsequent to the date of the commencement of the action for divorce. While he may have intended at an earlier date to become a resident of New Jersey, the facts do not bear out such contention. It is clear that he intended to retain his residence in Seattle, at least until May, 1928, for the purpose of securing a position with the city of Seattle. It is manifest that there was no intention on the part of the marital community to acquire a permanent residence at any other place than Seattle. Respondent's intention evinced in May, 1928, of acquiring a permanent residence in New Jersey came too late to deprive the superior court of King county of jurisdiction of the action for divorce.

■ Appellant stated in the application for a marriage license in October, 1928, that her residence was Bovina, New York. Though we hold that appellant at that time changed her residence, the court is not thereby deprived of jurisdiction. The facts clearly disclose that appellant was a resident of this state for one year immediately preceding the date she instituted her action for divorce; therefore a change of residence by her subsequent to the commencement of the action did not deprive the court of jurisdiction.

250

"A change of residence by plaintiff after the commencement of the suit and before its trial does not deprive the court of jurisdiction, . . ." 19 C. J. 28.

We are convinced from our examination of the evidence, as apparently the trial court was, that on the merits the appellant was entitled to a decree of divorce.

The judgment of dismissal is therefore reversed, and the cause remanded for further proceedings in harmony with the views herein expressed.

MITCHELL, C. J., PARKER, TOLMAN, and BEALS, JJ., concur.