[No. 29040. Department Two. July 13, 1943.]

*In the Matter of the Estate of* DELBERT A. PUGH, *Deceased.*[1]

[1]Reported in 139 P. (2d) 698.

Fred M. Bond, for appellant.

John J. Langenbach (Harry E. Hall, of counsel), for respondent.

BLAKE, J.—This is an appeal from an order awarding a homestead exemption to Anna Pugh, the widow of the deceased, Delbert A. Pugh. The appellant is Roverta Barton, a daughter of deceased by a former marriage. The property set aside as a homestead is described as "tracts numbered 49 to 53, both inclusive, of the Plat of Cranmoor in Pacific County." The property described comprises the north half of an improved cranberry bog. Title to the property was acquired in the name of the deceased and so remained at the time of his death.

The question for determination is whether or not the north half was the separate property of deceased. If it was, respondent is not entitled to have it set aside to her as a homestead, for Pugh died testate, leaving "one-half of all of [his] estate, real, personal and mixed and wherever situated" to his daughter, Roverta E. Pugh (appellant) and the other one half to his wife, Ann G. Pugh (respondent). Rem. Rev. Stat., § 1474 [P. C. § 9894]. In re Eagle's Estate, 5 Wn. (2d) 254, 105 P. (2d) 31, 109 P. (2d) 1072.

Whether the property was separate or community depends largely, if not entirely, upon where

the deceased and respondent were domiciled at the time title to the south half of the bog was acquired. For, as we view the facts, the only tenable claim that the north half is community property rests upon a purchase money mortgage executed by deceased and respondent when they acquired title to the south half. It is to be borne in mind that the status of property is to be determined as of the date of the acquisition *(Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673; *Folsom v. Folsom,* 106 Wash. 315, 179 Pac. 847); and, once established, the separate or community character of its status continues until changed by deed, due process of law, or some form of estoppel. *In re Sanderson's Estate,* 118 Wash. 250, 203 Pac. 75; *In re Binge's Estate,* 5 Wn. (2d) 446, 466, 105 P. (2d) 689.

The south half (an improved bog) was purchased in 1918 for three thousand dollars. Fifteen hundred dollars was paid in cash, and a purchase money mortgage given for the balance. There can be no doubt that the fifteen hundred dollars that went to make the cash payment was the separate property of the deceased; nevertheless, if the parties were domiciled in this state at that time, the community would have acquired a one-half interest in the south half. *Walker v. Fowler,* 155 Wash. 631, 285 Pac. 649.

The parties were residents of Hammond, Indiana, at the time they were married in 1914, and they resided there continuously until 1918. At the time of their marriage, deceased owned a piece of real property in Hammond which, as we gather from the record, was then improved with a dwelling house. There, deceased and respondent maintained a home until his death in 1941. It is not questioned but that the property belonged to the deceased and was, in contemplation of our decisions, his separate property. Apparently, it was the only resource deceased and respondent possessed aside from his earning power and three hundred dollars which respondent had at the time of marriage.

There is no evidence, however, that any portion of this three hundred dollars found its way into the purchase price or in the improvement of the cranberry bog. Consequently, it must be conclusively inferred that the fifteen hundred dollar cash payment made upon the acquisition of the south half was made from resources belonging to deceased alone.

■ Subsequent to 1918, deceased and respondent came to Pacific county every spring, where they resided in what is described as a shack situated on the north half of the bog. They maintained their home in Hammond, however, and returned there in the late autumn of each year until Pugh's death. The deed to the south half of the Pacific county property ran to "Delbert A. Pugh of the City of Hammond, State of Indiana"; and the mortgage for the balance due recited that it was executed by "Delbert A. Pugh and Anna G. Pugh his wife of Lake County in the State of Indiana."

The north half of the bog was acquired in 1926 through two deeds to Pugh, in one of which it was recited that the grantee was "of the City of Hammond of the State of Indiana." The purchase price of the north half was two hundred fifty dollars. It was unimproved at the time of acquisition but, prior to Pugh's death, it had been brought into a high state of cultivation; indeed, it became the choice part of the whole tract. It was improved with a dwelling of negligible value and a packing shed that cost one thousand to fifteen hundred dollars.

We think the only inference to be drawn from the evidence is that the purchase price and the expenditures for improvement of the north half were derived from the "issues and profits" from the south half, for, aside from the Indiana property, it does not appear that Pugh had any other resources. Now, unless respondent had a community interest in the south half, she acquired no community interest in the north half. For, if the south half was the separate property, the

"issues and profits" from it were separate property *(In re Woodburn's Estate,* 190 Wash. 141, 66 P. (2d) 1138); and property purchased and improved with separate funds is separate property. Separate property retains its identity as such as long as it can be traced and identified. *In re Dewey's Estate,* 13 Wn. (2d) 220, 226, 124 P. (2d) 805.

▮ So we come back to the question: Where were the deceased and respondent domiciled in 1918, when they executed the purchase money mortgage on the south half? If they were domiciled in Washington, the mortgage was presumptively a community obligation; and the community would have an interest in the property to the extent of the pledge of community credit. If their domicile was in Indiana, the mortgage, though executed by respondent, would not change the character of the property from separate to community. *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088; *Graves v. Columbia Underwriters,* 93 Wash. 196, 160 Pac. 436.

▮ We are convinced that, in 1918, the domicile of the deceased and respondent was in Hammond, Indiana, and continued there at least as late as 1927. The will under which the estate is being administered was executed in that year. In that instrument, the testator solemnly averred: "I, Delbert A. Pugh, of the City of Hammond, Lake County, Indiana . . . publish and declare this my last will and testament." Between 1918 and 1927, deceased and respondent executed five different mortgages on the Indiana property, each of which contained the recital that the mortgagors were "of Lake County, in the State of Indiana."

'Against these solemn declarations with respect to domicile, we have the vague and uncertain testimony of respondent on the issue. The burden was upon respondent to establish a change of domicile. *Polk v. Polk,* 158 Wash. 242, 290 Pac. 861. We think, in face of the repeated unequivocal recitals in solemn instru-

ments that deceased's residence was in Hammond, Indiana, respondent's testimony was insufficient to sustain the burden of proof. *Cruger v. Phelps*, 21 Misc. 252, 47 N. Y. Supp. 61; *In re Betancourt's Estate*, 144 Misc. 173, 258 N. Y. Supp. 649; *In re Eaton's Will*, 186 Wis. 124, 202 N. W. 309.

■ It follows that, at the time of acquisition, the north as well as the south half of the bog was the separate property of deceased *(Brookman v. Durkee*, 46 Wash. 578, 90 Pac. 914, 123 Am. St. 944; *Meyers v. Albert*, 76 Wash. 218, 135 Pac. 1003; *Myers v. Vayette*, 146 Wash. 1, 261 Pac. 647); and it has remained so even conceding that Washington became the domicile of deceased and respondent before the north half was completely developed. Granting that the development of that portion of the property was brought about through the joint efforts of deceased and respondent, the separate status of the property was not thereby changed. While the personal effort expended by the spouses upon the separate property of one may impress the issues and profits of such property with a community interest *(Jacobs v. Hoitt*, 119 Wash. 283, 205 Pac. 414; *Salisbury v. Meeker*, 152 Wash. 146, 277 Pac. 376), it does not affect the separate status of the property upon which the effort is expended. *Gray v. Perlis*, 76 Cal. App. 511, 245 Pac. 221; *Lewis v. Johns*, 24 Cal. 98, 85 Am. Dec. 49; *Horton v. Horton*, 35 Ariz. 378, 278 Pac. 370.

■ Since the entire bog was the separate property of the deceased and was "otherwise disposed of by will," it was not subject to a claim of homestead. Rem. Rev. Stat., § 1474.

The order from which the appeal is taken is reversed.

SIMPSON, C. J., BEALS, ROBINSON, and GRADY, JJ., concur.