[No. 65564-2. En Banc.]

Argued May 19, 1998. Decided December 24, 1998.

THE STATE OF WASHINGTON, *on the Relation of Steven Quick-Ruben, Petitioner,* v. ARTHUR W. VERHAREN, *Respondent.*

890

SANDERS and MADSEN, JJ., dissent in part by separate opinion; ALEXANDER, J., did not participate in the disposition of this case.

*Steven Quick-Ruben*, pro se.

*Edwards, Sieh, Smith & Goodfriend, P.S.*, by *Catherine Wright Smith*, for petitioner.

*Kurt M. Bulmer*; and *Ryan, Swanson & Cleveland, P.L.L.C.*, by *John P. Mele*, for respondent.

TALMADGE, J. — A losing candidate for election to the superior court brought this private quo warranto action asserting entitlement to the constitutional office as opposed to the election winner. The losing candidate claimed the victor was not a qualified candidate because the victor was allegedly not a county resident. An action was commenced before the winner was sworn in for the term of office to which he had been elected.

We decide the petitioner lacked standing to bring the private quo warranto action, which asserted entitlement to the constitutional office of superior court judge, having failed to plead a special interest or entitlement to the office as required by numerous Washington quo warranto cases. We also decide the action was premature, having been commenced before the term of office at issue. We affirm the trial court's dismissal of the action and imposition of attorney fees under CR 11 and RCW 4.84.185. We also award fees on appeal.

## ISSUES

1. Does Quick-Ruben have standing to bring this private quo warranto action?

2. Was Quick-Ruben's private quo warranto action premature?

3. Was this action frivolous, meriting an award of attorney fees under RCW 4.84.185 or CR 11 against Quick-Ruben in favor of Verharen?

## FACTS

Steven Quick-Ruben (Quick-Ruben) filed a summons and information in quo warranto on December 23, 1996, seek-

ing a judgment declaring that he had superior title to the office of Judge of the Pierce County Superior Court Department 1 for the term beginning January 13, 1997. The information also sought a judgment for damages based on Judge Arthur Verharen's (Verharen) usurpation of the office. Verharen's term of office, as a result of the 1996 election, commenced on January 13, 1997, and has continued through to the present time. Verharen filed an answer raising affirmative defenses to Quick-Ruben's action including premature filing of the information, lack of standing and an assertion residency within Pierce County was not a requirement to hold the office of superior court judge.

■ Verharen moved to dismiss Quick-Ruben's action, which the trial court granted because Quick-Ruben's action was premature and lacked standing; the trial court also granted an undetermined amount of attorney fees against Quick-Ruben on the basis of CR 11.[1] The trial court subsequently signed orders awarding attorney fees to Verharen against Quick-Ruben pursuant to CR 11 in the amount of $8,732.50, and pursuant to RCW 4.84.185 in the amount of $6,632.50, and ordered payment to be made within 45 days.[2]

---

[1]The trial court did not rule on Quick-Ruben's partial summary judgment motion to strike Verharen's affirmative defenses except for residency, nor did it rule on Verharen's cross-motion for dismissal on the basis that residency is not a requirement for the office of superior court.

[2]Quick-Ruben did not pay within 45 days. In an August 3, 1997 letter, Verharen's attorney notified Quick-Ruben's attorney that if the trial court's prior orders were not complied with by August 20, 1997, he would seek to force compliance. Quick-Ruben then noted a final judgment for presentation. Verharen filed a motion to enforce by contempt the court's previous orders to pay sanctions. The trial court considered both motions, declined Quick-Ruben's request to enter a final judgment and granted Verharen's contempt motion. In so doing, the trial court acted within its discretion. *See In re Marriage of Mathews*, 70 Wn. App. 116, 126, 853 P.2d 462 (coercive sanctions imposed for contempt are within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion), *review denied*, 122 Wn.2d 1021, 863 P.2d 1353 (1993); *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). *See also Marley v. Department of Labor & Indus.*, 125 Wn.2d 533, 540-41, 886 P.2d 189 (1994); *State v. Coe*, 101 Wn.2d 364, 370, 679 P.2d 353 (1984) (a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid); *Deskins v. Waldt*, 81 Wn.2d 1, 5, 499 P.2d 206 (1972). Quick-Ruben then purged the contempt by making full payment as ordered.

## ANALYSIS

A. Quo Warranto Actions

Quo warranto actions have their roots in the English common law tradition; the writ of quo warranto was designed to challenge the entitlement of a person to hold office. *State ex rel. Smith v. Mills*, 2 Wash. 566, 568-69, 27 P. 560 (1891); *see also* 74 C.J.S. *Quo Warranto* § 1, at 174-75 (1951); 65 AM. JUR. 2D *Quo Warranto* §§ 1-3, at 230-32 (1972), at 49 (Supp. 1998). In Washington, actions for quo warranto are also part of our legal tradition. The Washington Constitution, article IV, section 4 confers original jurisdiction upon this Court over quo warranto as to all state officers.[3] Quo warranto actions are also recognized in statute:

> The [quo warranto] information may be filed by the prosecuting attorney in the superior court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise or corporation which is the subject of the information.

RCW 7.56.020. Indeed, we have determined quo warranto is the proper and exclusive method of determining the right to public office. *Green Mountain Sch. Dist. No. 103 v. Durkee*, 56 Wn.2d 154, 159, 351 P.2d 525 (1960) (citing cases).

■ Shortly after the adoption of our state constitution, we addressed the standing of parties to pursue quo warranto actions in *State ex rel. Smith v. Mills*, 2 Wash. 566,

---

[3]Quick-Ruben asserted in oral argument that the scope of the constitutional quo warranto action has not been interpreted by case law. We note, however, the statutory quo warranto action in RCW 7.56 at issue in this case is broader than the constitutional action, which applies to "all state officers." *Cf.* CONST. art. IV, § 4 *with* RCW 7.56.010 *and* .020. Moreover, Quick-Ruben did not seek to invoke our original jurisdiction pursuant to CONST. art. IV, § 4. We decline to specify the parameters of the constitutional quo warranto action here when the parties have not appropriately raised it. *See* RAP 12.1(a); *State v. Johnson*, 119 Wn.2d 167, 170-71, 829 P.2d 1082 (1992) (argument raised for first time at oral argument is not properly before the court and need not be considered).

571-75, 27 P. 560 (1891), where we first set forth guidelines for quo warranto actions which have been followed for more than 100 years. We noted:

> if the injury is one that is peculiar to the individual he has his right of action, but if it affects the whole community alike, the remedy is by proceedings by the state through its appointed agencies.

*Mills*, 2 Wash. at 575. We also discussed standing and procedure in detail:

> The common law on [quo warranto] has been supplanted by the statute—the state has legislated on the subject—and it is to the statute we must look, not only for the practice of the court, but for the qualifications of the relator . . . . The statutes specify those who have the legal right to invoke this remedy. If the relator has a standing here, it must be under § 703, which is as follows:
>
> "Sec. 703. The information may be filed by the prosecuting attorney in the district court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person, on his own relation, whenever he claims an interest in the office, franchise or corporation which is the subject of the information."
>
> The legislature has looked out for the interests of the public by providing that the information shall be filed by the prosecuting attorney, either on his own relation, or when directed by the court or other competent authority; and private interests are provided for in the latter part of the section by the words, "or by any other person on his own relation." When? When he "claims an interest in the office, franchise or corporation which is the subject of the information." What interest is meant? Surely not an interest in common with other citizens, for the protection of that interest is already provided for in the first part of the section. If the statute is to be construed as having any meaning at all, and if words are to be given their ordinary meaning, and the ordinary grammatical construction is given to the language and sentences, it must mean that the interest must be a special interest, not common with the interests of the community . . . .

. . . .

. . . [The quo warranto statutes] all convey the idea that where the relator is other than the prosecuting attorney he must show his interest, and will be entitled to damage if he prevail, showing conclusively that his interest must be a special interest, and that his damage would be equally distinct.

*Mills*, 2 Wash. at 571-73. *See also State ex rel. Brown v. Warnock*, 12 Wn.2d 478, 481-83, 122 P.2d 472 (1942) (town mayor, having no interest in the office of town attorney, proceeded correctly in petitioning the court to require the prosecuting attorney to show cause why he should not be compelled under the quo warranto statute to file an information in quo warranto to determine the right of the incumbent town attorney who allegedly held such office unlawfully). In *State ex rel. Johnson v. Lally*, 59 Wn.2d 849, 370 P.2d 971 (1962), the petitioner (or relator) asked the superior court to compel the prosecutor to bring an action of quo warranto against a nonprofit corporation; we upheld the trial court's denial of mandamus, and set forth the appropriate procedures for a public quo warranto action:

The relator does not claim an interest in the corporation. However, we have held that a taxpayer who has no special interest in the subject matter of the information may apply to the court for an order of mandamus where the prosecutor has refused to act.

Where the court is asked to take such action by one claiming no interest in the corporation, however, the burden is upon him to make a plain showing that facts exist which would justify the prosecutor in maintaining the quo warranto proceeding. Final discretion rests in the trial court as to whether the prosecuting attorney should be directed to institute such a proceeding; and unless it plainly appears that the trial court abused its discretion in refusing to order the prosecuting attorney to file an information, this court will affirm its action.

*Johnson*, 59 Wn.2d at 850-51 (citations omitted).

Thus, we have established two types of quo warranto actions under RCW 7.56.020: a public quo warranto action brought by the prosecutor, and a private quo warranto action available only where the petitioner can assert and prove a special interest in the office. Quick-Ruben did not seek a public quo warranto action[4] and we now turn to whether he properly asserted a *private* quo warranto action here.

## B. Quick-Ruben Failed To Meet His Burden in a Private Quo Warranto Action

In order to sustain a private quo warranto action, the petitioner must plead and prove a special interest in the office which is the subject of the action. In *State ex rel. Dore v. Superior Court for King County*, 167 Wash. 655, 9 P.2d 1087 (1932), we affirmed the trial court's dismissal of a quo warranto action by the mayor-elect of Seattle to unseat the interim mayor because the mayor-elect lacked standing to maintain the action:

> It seems essential that the relator should plead some right or title in himself to the unexpired term, in order to be heard. Unless he has some interest, he can not maintain the action under the statute. It is no doubt true that, when the sovereign, the state or its proper officer, brings an action in the nature of *quo warranto*, alleging that one is wrongfully usurping an office which belongs to another, the common law rule places the burden on the respondent to show his title to the office. But *when a private individual seeks to recover an office in his own right, we think he must plead and prove title thereto in himself* . . . .
>
> . . . .
>
> The language of the statute, "whenever he claims an interest in the office," would seem to demonstrate the necessity for pleading title in the one bringing the action and seeking relief. We know of no reason why an individual plaintiff in actions of

---

[4]Quick-Ruben did not file an action for mandamus to compel the Pierce County Prosecutor to act. The record is devoid of evidence Quick-Ruben provided information to the prosecutor to act against Verharen.

this kind, . . . should not assume the burden of showing his title to that which he seeks to recover. A mere citizen, a voter or a taxpayer has no right to maintain such an action. It must be brought under the statute officially by the prosecuting attorney, or it must be brought by a person who claims an interest in the office; and the relator, having failed to allege facts showing that he was elected to fill the unexpired term of Mayor Edwards, has failed to show an interest in the office which he seeks.

He, as mayor-elect for the regular term to begin on the first Monday of June, 1932, has no right to question the title of Mayor Harlin to the office of mayor in the interim. That can only be done by the prosecuting attorney or by some one who asserts an interest in the particular term now enjoyed by Mayor Harlin.

*Dore,* 167 Wash. 657-59 (some emphasis ours). Thus, Quick-Ruben had to prove a *present special interest* in the Pierce County Superior Court Department 1 position to which he claimed title in order to sustain a *private* quo warranto action.

The basis of Quick-Ruben's asserted title to the superior court position is his claim that he is "constitutionally entitled to the office" under the following rationale: At the time of filing for the office of superior court judge, Quick-Ruben was a qualified candidate for the superior court and Verharen was not because he was not a resident of Pierce County; as no election is required under CONST. art. IV, § 29, for a race with only one qualified judicial candidate,[5] he is entitled to the office without an election.

■ Quick-Ruben's assertion of title in the superior court position is as illusory as his analysis is confused. In his reply brief to this Court and in oral argument, Quick-Ruben

---

[5]In pertinent part, CONST. art. IV, § 29 provides, in superior court judicial elections, a candidate may be certified as elected without the usual full primary and general elections where only one candidate has filed for the position. *See Nuxoll v. Munro,* 104 Wn.2d 456, 458-59, 706 P.2d 223 (1985) (under CONST. art. IV, § 29, both the primary and the general election may be dispensed with if only one candidate files for a superior court position); *Fain v. Chapman,* 89 Wn.2d 48, 54-55, 569 P.2d 1135 (1977) (same).

appears to suggest that the gravamen of his case is that Verharen was *ineligible to file* for the office of superior court judge because he was not a Pierce County resident. Quick-Ruben contends he never challenged Verharen's right to complete his existing term of office, and notes his right to challenge Verharen's eligibility to run under RCW 29.65.010. Quick-Ruben's attempt to transmute a private quo warranto action into a statutory challenge under RCW 29.65.010 plainly fails.

RCW 29.65.010 allows any registered voter to contest the right of a person declared elected to an office to receive the certificate of election. Presumably, Quick-Ruben bases his argument on RCW 29.65.010(2):

> Because the person whose right is being contested was not at the time he was declared elected eligible to that office.

Contests under RCW 29.65.010 are governed by the procedures of RCW 29.04.030. RCW 29.04.030(6) requires that for a challenge to the issuance of a certificate of election due to error or omission, an affidavit of an elector must be filed with the court no later than 10 days following the issuance of the election certificate.[6] Verharen apparently received a certificate of election to the office of superior court judge. There is no evidence whatsoever in this record Quick-Ruben invoked the provisions of RCW 29.65.010 or RCW 29.04.030 below, or timely complied with the statutory procedures. We decline to treat this action as one challenging Verharen's eligibility to seek the office of judge, as Quick-Ruben would belatedly have us do.

In fact, had Quick-Ruben successfully challenged Verharen's eligibility to file for the superior court, it would have also affected Verharen's entitlement to serve the remainder of his term in office. If Quick-Ruben were correct that Verharen was no longer a Pierce County resident and such residency was constitutionally mandated, the

---

[6]RCW 29.04.030(1) and (3) allow a party to challenge the wrongful placement of a person's name on the ballot. Quick-Ruben never sought to bar placement of Verharen's name on the primary ballot.

result of such disqualification would be a vacancy in the office at the time Verharen ceased to be a Pierce County resident. *See* RCW 42.12.010(4) (providing that an elective office shall become vacant upon the incumbent ceasing to be a legally registered voter of the county from which he or she shall have been elected). WASH. CONST. art. IV, § 5, provides that such vacancy on the superior court shall be filled until the next general election by appointment by the governor, not by allowing the election loser to assume such office. *See also* RCW 2.08.120. *Cf. State ex rel. Forstell v. Otis*, 131 Wash. 455, 459-60, 230 P. 414 (1924) (noting the removal of a councilman from the ward for which he was elected creates a vacancy in such office).

■ Quick-Ruben points to no authority which would confer the office on an opponent who was defeated in the prior election by a candidate who failed to meet constitutional eligibility standards. Instead, Quick-Ruben's electoral defeat actually deprived him of any argument he had a special interest in the office. In *People ex rel. Duncan v. Beach*, 294 N.C. 713, 242 S.E.2d 796 (1978), the North Carolina Supreme Court rejected the same "entitlement to office" theory advanced by Quick-Ruben here, and held the result of the vote favoring the petitioner's opponent, while not effective to give the opponent legal entitlement to the office due to his age ineligibility, was nonetheless legally effective in excluding the petitioner from entitlement to that office; noting the one clear result of the election was that the voters rejected the petitioner. Having thus been defeated in the election, the petitioner had no legal right to assume office by virtue of the election. *Duncan*, 294 N.C. at 716-21, 242 S.E.2d at 798-801. *See also* 29 C.J.S. *Elections* § 243, at 676-77 (1965 & Supp. 1997) (collecting cases at n.93) (noting when a majority or plurality of votes are cast for an ineligible candidate, the fact that the winning candidate is ineligible and not qualified to take office does

not entitle the runner-up to be declared elected to the contested office).[7]

Quick-Ruben failed to show any *special interest* in the office of Pierce County superior court judge. Having failed to establish such special interest, he has thus failed to meet his burden to sustain the private quo warranto action he chose to pursue.[8]

## C. Premature Filing

■ An additional, and equally compelling, reason for dismissal of Quick-Ruben's private quo warranto action is that it was prematurely filed in December 1996 *before* the

---

[7]By contrast, where one asserts title to an elective office by virtue of being an *electoral victor,* quo warranto is the appropriate proceeding for testing such title. *State ex rel. Forstell v. Otis,* 131 Wash. 455, 456, 460, 230 P. 414, 415, 416-17 (1924) (quo warranto action is the appropriate proceeding for duly elected councilman who has been removed from office by the mayor); *Clarken v. Blomstrom,* 174 Wash. 612, 613-14, 617, 26 P.2d 87 (1933) (where tie in election for school director is determined by lot, losing incumbent's challenge to declared winner's entitlement to such office may be determined only in quo warranto action); *Foulkes v. Hays,* 85 Wn.2d 629, 633, 537 P.2d 777 (1975) (citing cases in which quo warranto proceedings were brought to contest election results independent of statutory remedies).

Similarly, the relator may assert a special interest in appointive office by a quo warranto action. *State ex rel. Heilbron v. Van Brocklin,* 8 Wash. 557, 36 P. 495 (1894) (where mayor, under authority of city charter, removes member of public works board, and appoints his successor, quo warranto by officer removed against such successor is proper remedy, to review proceedings of the mayor); *State ex rel. Niggle v. Kirkwood,* 15 Wash. 298, 299-300, 46 P. 331 (1896) (proper remedy of one removed from the post of police commissioner by the mayor is by quo warranto proceedings against the incumbent appointed as his successor); *Kimball v. Olmsted,* 20 Wash. 629, 56 P. 377 (1899) (challenge to entitlement to office by physician appointed and then removed by mayor from city board of health may be pursued only by quo warranto); *State ex rel. Davis v. Johns,* 139 Wash. 525, 248 P. 423 (1926) (former regent of state university brings quo warranto action to settle title to office of regent where he was appointed and later removed by governor to such office); *State ex rel. Peter v. Geisness,* 140 Wash. 300, 248 P. 421 (1926) (court affirms trial court's dismissal of duly appointed police judge's assertion of entitlement to office by quo warranto action against his successor where successor was appointed by new mayor and commissioners); *Municipal Court ex rel. Tuberg v. Beighle,* 28 Wn. App. 141, 142, 622 P.2d 405 (1981), *aff'd,* 96 Wn.2d 753, 638 P.2d 1225 (1982) (quo warranto was proper statutory procedure to test right of duly appointed, but subsequently dismissed, magistrate and his successor to that position).

[8]The remedy of a public quo warranto action through the prosecuting attorney was available to Quick-Ruben, provided he convinced the prosecutor or the court through a mandamus proceeding such action was justified. *See Johnson,* 59 Wn.2d at 850-51; *Brown,* 12 Wn.2d at 483-84.

term of office in which Quick-Ruben was interested commenced. Quick-Ruben was advised of this problem by opposing counsel and given the opportunity to dismiss the action, refile it after Verharen's term commenced, and serve process on opposing counsel. He declined. In order to sustain a private quo warranto action he had to plead and prove a present special interest in the public office in question. In *Dore*, we held Seattle's mayor-elect had no right to question the title of the interim mayor to that office before the mayor-elect's term began, holding:

> That can only be done by the prosecuting attorney or by some one who asserts an interest in the particular term now enjoyed by [the interim mayor].

*Dore*, 167 Wash. at 659. Under Quick-Ruben's own theory, his alleged special interest in the office did not accrue until the commencement of the term for which he ran as a candidate. *Accord State ex rel. Tennent v. Tollefson*, 4 Wn.2d 194, 198, 103 P.2d 36 (1940) (recognizing that a suit to try title to a publicly elected office of mayor would fail if pursued before the term in question commenced). Because he filed his private quo warranto action on December 23, 1996, prior to the January 13, 1997 commencement of the judicial position's term, he had no *present* special interest to assert when the action was filed and the trial court properly dismissed Quick-Ruben's action.[9]

■ In light of our disposition of the foregoing issues, we do not reach the issue of whether residency in a county is a qualification for the office of superior court judge. While we

---

[9]Once Quick-Ruben's action is prematurely undertaken it is not cured by later commencement of the term of office or amendment of the petition. *Broyles v. Commonwealth*, 309 Ky. 837, 839-40, 219 S.W.2d 52, 54 (1949) (where quo warranto proceeding to prevent defendant from usurping office of member of board of education which was to begin on January 3 was prematurely instituted on January 1, fact that defendant subsequently assumed the office and petition was thereafter amended would not give life to the premature petition, and action should have been dismissed without prejudice). *See also* 65 AM. JUR. 2D *Quo Warranto* § 55, at 268 (1972) ("In quo warranto, as in other civil proceedings, the cause of action should exist and be complete when the proceedings are commenced. If instituted before that time the proceedings are premature, and cannot be given life by subsequent amendment." (Footnotes omitted.))

note (1) the record suggests Verharen was indeed a resident of Pierce County,[10] and (2) such residency may not even be required for a superior court judicial candidate,[11] we make no ruling on these issues because they were not decided by the trial court and are not ripe for review. *Department of Ecology v. Acquavella*, 131 Wn.2d 746, 759-60, 935 P.2d 595 (1997) (where the trial court made no finding whether an irrigation district had forfeited a portion of its water rights, that issue was not ripe for review).

[10]Quick-Ruben asserts Verharen cosigned a refinancing agreement on his wife's Kitsap County home and filed certain documents with the Public Disclosure Commission indicating the Kitsap County house was his home. Verharen argues he has maintained his abode in Pierce County since 1970. *Fiske v. Fiske*, 48 Wn.2d 69, 72, 290 P.2d 725 (1955) (a residence once established is presumed to continue, and the burden is upon him who asserts a change from a residence once it is established); *Polk v. Polk*, 158 Wash. 242, 248, 290 P. 861 (1930) (a residence, once established, continues until a new one is acquired; a change of residence does not consist solely in going to and living in another place, but it must be with the intent of making that place the permanent residence); *accord Sasse v. Sasse*, 41 Wn.2d 363, 366, 249 P.2d 380 (1952); *In re Estate of Lassin*, 33 Wn.2d 163, 165-66, 204 P.2d 1071 (1949); *In re Estate of Pugh*, 18 Wn.2d 501, 505, 139 P.2d 698 (1943). Verharen lived with his first wife in a house in Tacoma until his 1989 divorce, then moved into a Tacoma apartment. In May 1990, he bought a 37-foot sloop with functional galley, head, living and sleeping spaces; moved out of his apartment and onto his boat and has lived there ever since. At the time of said purchase, he reported the boat as his new address to the IRS. He pays a monthly live-aboard fee at the Tacoma Yacht Club where the boat is moored. Although in August 1992 Verharen married Judge Karen Conoley, who resides in Kitsap County, both have maintained their separate residences. Verharen spends two nights a week at his boat, two nights at his wife's house and splits the weekends between the two. Verharen continues to receive his mail at his boat address; his driver's license, car registration and bank checks reflect his boat address; he remains a registered voter in Pierce County, maintains all his bank accounts in Pierce County, and pays all living expenses from same. His banker, doctors, dentist, dry cleaners and insurance agent are all in Pierce County. He has continued his membership in various Pierce County organizations; he belongs to no organizations in Kitsap County.

[11]CONST. art. IV, § 17 (sets the qualifications for superior court judges, but does not include county residency). *See also The Journal of the Washington State Constitutional Convention 1889*, at 623 (Beverly Paulik Rosenow ed., 1962) (noting "qualified elector" and two year residency (in Washington state or territory) requirements were debated as possible qualifications for superior court judges and rejected at the constitutional convention); *In re Bartz*, 47 Wn.2d 161, 164-67, 287 P.2d 119 (1955) (noting Legislature could not add to constitutional qualifications, and that CONST. art. III, § 25, requiring state officers to be citizens of the United States and qualified electors, did not apply to the judiciary); *Gerberding v. Munro*, 134 Wn.2d 188, 201-10, 949 P.2d 1366 (1998) (holding qualifications prescribed by the constitution for constitutional offices are exclusive and may not be added to by statute absent express constitutional authority to do so).

## D. Sanctions and Fees

 Quick-Ruben challenges the trial court's award of fees under RCW 4.84.185[12] and sanctions under CR 11,[13] urging us to engage in de novo review of the trial court's decision of this issue. However, the appropriate standard of review regarding sanctions under the statute or rule is abuse of discretion. *Tiger Oil Corp. v. Department of Licensing*, 88 Wn. App. 925, 937-39, 946 P.2d 1235 (1997); *Fluke Capital & Management Servs. Co. v. Richmond*, 106 Wn.2d 614, 625, 724 P.2d 356 (1986); *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994) (*Biggs* II). In *Biggs v. Vail*, 119 Wn.2d 129, 830 P.2d 350 (1992) (*Biggs* I), we noted RCW 4.84.185, was intended to apply to "actions which, *as a whole*, were spite, nuisance or harassment suits[,]" *id.* at 135, but went on to note:

> [T]he language and the history of the frivolous lawsuit statute (RCW 4.84.185) are clear. The lawsuit, as a whole, that is in its entirety, must be determined to be frivolous and to have been advanced without reasonable cause before an award of attorneys' fees may be made under the statute.

*Id.* at 137. In *Biggs* I, we reversed the trial court's award of fees under RCW 4.84.185 because the trial court found only three of four claims asserted by Biggs to be frivolous.

---

[12]RCW 4.84.185 provides:

> In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense.

[13]CR 11 provides that by signing the pleading the party and/or attorney certifies:

> that to the best of the party's or attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The sanction for violation of CR 11 may include an award of reasonable attorney fees.

Because the fourth claim advanced to trial, the suit could not be considered frivolous in its entirety. Thus, fees under RCW 4.84.185 were not appropriate. *Id.* at 132, 137. Under *Biggs* I, if any claims advance to trial, a trial court's award of fees under RCW 4.84.185 cannot be sustained.

With respect to an award under CR 11, we noted in *Biggs* II:

> [I]n imposing CR 11 sanctions, it is incumbent upon the court to specify the sanctionable conduct in its order. The court must make a finding that either the claim is *not* grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, *or* the paper was filed for an improper purpose.

*Biggs* II, 124 Wn.2d at 201.

Here, although the trial court's May 15, 1997 order did not rule on all five of the motions before it, the order clearly dismissed the case based on Quick-Ruben's lack of standing and premature filing. Unlike *Biggs* I, no claim survived to trial. Furthermore, in its June 13, 1997 order regarding fees pursuant to RCW 4.84.185 and CR 11, the trial court specifically found Quick-Ruben's theory of the case "unfounded and not based on any reasonable theory of the law." Clerk's Papers at 373. The trial court also found "[h]aving standing is fundamental to being able to bring an action. Mr. Quick-Ruben did not have standing, which reasonable inquiry would have shown him." *Id.* The trial court then concluded:

> 2. The evidence before the court at the time of the motion establishes that Mr. Quick-Ruben's position on standing was untenable. When he filed an action in which he either knew or should have known that he lacked standing, his action was frivolous and was advanced without reasonable cause. An award of attorney fees is appropriate under RCW 4.84.185.
>
> 3. Reasonable inquiry by Mr. Quick-Ruben and his counsel would have shown that the theory that Mr. Quick-Ruben had standing, advanced in the summons and complaint and in subsequent pleadings, was not well grounded in fact nor was it

warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. Mr. Quick-Ruben and his counsel violated CR 11 and sanctions are warranted.

Clerk's Papers at 373-74. As the trial court met the requirements of *Biggs* I and II, its award of fees and sanctions under RCW 4.84.185 and CR 11 cannot be said to be an abuse of discretion.

In a separate section of his brief, Judge Verharen requests an award of attorney fees on appeal pursuant to RAP 18.9(a) which provides an appellate court may order a party who "files a frivolous appeal" to "pay terms or compensatory damages" to any party harmed by its actions. We have repeatedly noted:

> An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there [is] no reasonable possibility of reversal.

*Presidential Estates Apartment Assocs. v. Barrett*, 129 Wn.2d 320, 330, 917 P.2d 100 (1996) (quoting *Fay v. Northwest Airlines, Inc.*, 115 Wn.2d 194, 200-01, 796 P.2d 412 (1990)); *State v. Rolax*, 104 Wn.2d 129, 136, 702 P.2d 1185 (1985).

While we are reluctant to assess fees lest we be viewed as "protecting one of our own," Quick-Ruben had no standing to pursue this private quo warranto action, and he actually filed the action prematurely. Quick-Ruben's continuation of a meritless claim through appeal entitles Verharen to attorney fees on appeal. RAP 18.9(a).

## CONCLUSION

The trial court properly dismissed Quick-Ruben's private quo warranto action because he lacked standing. Quick-Ruben failed to plead and prove a special interest in the Pierce County superior court judge position, an essential predicate to a private quo warranto action. Moreover, his

action for quo warranto was prematurely filed and he was aware the action was premature. The trial court's award of fees under RCW 4.85.185 and CR 11 did not constitute an abuse of discretion and is affirmed. Attorney fees on appeal under RAP 18.9(a) are granted to Verharen.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, and JOHNSON, JJ., concur.

SANDERS, J. (dissenting) — I agree with the majority except to the extent it affirms the award of attorney fees to Verharen under RCW 4.84.185, affirms the sanctions imposed on Quick-Ruben under CR 11, and awards Verharen attorney fees for his appeal pursuant to RAP 18.9(a). Majority at 905-06.

An award of reasonable attorney fees may be made "upon written findings by the judge that the action . . . was frivolous and advanced without reasonable cause . . . ." RCW 4.84.185. We require the action be, in its entirety, frivolous and advanced without reasonable cause before reasonable fees may be awarded, *Biggs v. Vail*, 119 Wn.2d 129, 134, 830 P.2d 350 (1992) (*Biggs* I), because litigants should not fear adverse consequences for reasonably seeking to judicially vindicate their perceived legal entitlements. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717-18, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967) (noting that litigation is uncertain and that parties should not be penalized for defending or prosecuting a lawsuit and that poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included attorney fees), *superseded by statute on other grounds as stated in Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 82 A.L.R.FED 97 (9th Cir. 1985); S.B. 3130, 48th Legis., Reg. Sess. (Wash. 1983) (Statement of Washington State Bar Association) (commenting favorably on proposed frivolous civil action statute which it had developed, but noting that English system of providing attorney fees to winning side of every lawsuit would have

chilling effect on the public's use and access to the judicial system as a means of settling legitimate disputes). Just because underlying claims are weak is not to say they are frivolous. *Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 39-40, 785 P.2d 447 (1990) (upholding summary judgment dismissal of appellants' argument, relying upon well-established Washington case law, but nonetheless refusing to award attorney fees).

The trial judge in the case at hand predicated his attorney fee award upon finding that Quick-Ruben did not have standing to bring this action, and the "fact" that "[a]ny reasonable amount of research" would have established this. Clerk's Papers (CP) at 373.[14]

But Quick-Ruben raised a constitutional question of first impression regarding his right to succeed to the office of superior court judge if his opponent were disqualified. He argued he was the only "qualified" candidate in the electoral contest with Judge Verharen and would necessarily succeed to Judge Verharen's seat by the operation of law. *See* Appellant's Br. at 13 (citing WASH. CONST. art. IV, § 29). As he had the right to electorally contest the seat, he asserts he has standing to compel it if the winner in a two-man race is disqualified. Appellant's Br. at 14. The argument has a certain logic.

Moreover the argument is of constitutional magnitude, debatable, and a matter of first impression for this state, and thus could not be "frivolous" as that term has been previously defined. *See Moorman v. Walker*, 54 Wn. App. 461, 466, 773 P.2d 887 (1989).[15] Admittedly his argument, as the majority correctly perceives, was unpersuasive, majority at 898, as today we adopt the analysis of the North

[14]The trial judge dismissed Quick-Ruben's suit on two grounds: premature filing and lack of standing. However, fees and sanctions were awarded only on the grounds that Quick-Ruben's argument on standing was frivolous.

[15]Quick-Ruben sought direct appeal in this court on the grounds that it was a quo warranto action and that it raised important public issues. *State ex rel. Quick-Ruben v. Verharen*, No. 65564-2, Statement of Grounds for Direct Review 7 (Wash. 1998). A majority of this court voted to retain jurisdiction of this case. *Id.* at Order (Mar. 3, 1998).

Carolina Supreme Court which rejected an argument much like Quick-Ruben's. Majority at 899 (citing *People ex rel. Duncan v. Beach*, 294 N.C. 713, 242 S.E.2d 796, 798-801 (1978)). And I also find comfort in the result because, as the majority notes, the same is supported by a host of citations from other jurisdictions. Majority at 899-900 (citing 29 C.J.S. *Elections* § 243, at 676-77 (1965 & Supp. 1997) (collecting cases at note 93)). But it is precisely because this authority is merely persuasive and not controlling which makes Quick-Ruben's assertion of standing—while mistaken—legitimate, and not frivolous. Certainly the fact that other jurisdictions with other case law and other constitutional or statutory imperatives have rejected Quick-Ruben's argument does not make it frivolous as we are not bound by this precedent but must start afresh.

More importantly, I am troubled by the implication of a finding of fact that "any reasonable amount of research" would have established Quick-Ruben's lack of standing. It is simply untenable to conclude an attorney in Washington is obligated to find, consider, and then conclude our court is necessarily bound by any analogy to nonbinding decisions in other jurisdictions.

The point is illustrated by a comparison of the North Carolina *Duncan* case to the case at bar. The plaintiff-relator in *Duncan* brought his argument under state statute, not the state constitution. *Duncan*, 242 S.E.2d at 798. Additionally, the North Carolina Supreme Court, unlike this court, was constrained by the binding precedent of earlier state case law holding that a person receiving less votes in an election is not entitled to office upon determination that the winner of the election was unqualified. *Id.* at 799. These are distinguishing factors.

Moreover Quick-Ruben properly addressed the standing question under the plain language of our constitution. Under such circumstances the trial court's conclusion of law that the action was frivolous was untenable and an error of law requiring reversal. *See State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971) (noting when

trial court's action is untenable it is an abuse of discretion).

The trial court's award of sanctions under CR 11 was also predicated on the problematic assertion that "[r]easonable inquiry by Mr. Quick-Ruben and his counsel" would have shown that his theory of standing was not well grounded in fact nor warranted by existing law. CP at 375.

This, of course, is the same justification considered above and must fail for the same reasons. The distinction of the trial court between an award for a frivolous lawsuit and the sanctions awarded under CR 11 is without a difference as a debatable issue of first impression raising a constitutional question is no more a violation of CR 11 than it is a violation of RCW 4.84.185. *See Hicks v. Edwards*, 75 Wn. App. 156, 163, 876 P.2d 953 (1994).

CR 11 sanctions are meant to deter frivolous pleadings, *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994) (*Biggs* II), not "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992) (citation omitted). The opinion announced today lays to rest any question as to the validity of Quick-Ruben's theory of standing, but we must judge the reasonableness of a pleading not with the benefits of self-fulfilling hindsight but by examining what was known at the time the pleading was submitted. *Id.* at 220. The bottom line is that before today Washington had not squarely rejected Quick-Ruben's theory.

Finally, our decision to impose fees on appeal must also fail for the same reason. *See Cary v. Allstate Ins. Co.*, 130 Wn.2d 335, 347-48, 922 P.2d 1335 (1996) (declining to award fees on appeal where case of first impression raised debatable issue of substantial public impression).

Any inquiry about whether an appeal is only frivolous is guided by five considerations: (1) A civil appellant has a right to appeal; (2) all doubts as to the frivolity of an appeal are resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an affirmation based

on the rejected arguments does not render the appeal frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and every claim is so totally devoid of merit that there was no reasonable possibility of reversal. *Green River Community College Dist. No. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986) (quoting *Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980)).

In *Green River* we denied a request for attorney fees despite the fact that the appeal culminated over 10 years of conflict involving two appearances before this court and before the Higher Education Personnel Board over a dispute involving less than 20 working hours for three employees, an excess of effort we described as "[s]uch an obdurate course of behavior [that it] is directly at odds with the best interests of the employees, the college, and the public." *Green River Community College Dist.*, 107 Wn.2d at 443. But we chose not to award fees because, in the midst of the tumult, a meritorious argument on an issue unresolved by this court was raised and "[w]e cannot say that there were 'no debatable issues upon which reasonable minds might differ.'" *Id.* (quoting *Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 509, 716 P.2d 869 (1986) (Utter, J., concurring in part, dissenting in part)).

Quick-Ruben's argument on standing, however weak, was not devoid of merit. While I otherwise agree with the majority's analysis and conclusion, I am constrained to refrain from asserting others might not reasonably differ. The trial court's award of fees was an abuse of discretion, and a further award of fees on this appeal compounds the error.

MADSEN, J., concurs with SANDERS, J.

Reconsideration denied February 1, 1999.